DALLAS TRANSFER & TERMINAL WAREHOUSE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51536, 60182. Promulgated January 31, 1933.

*Percy W. Phillips, Esq., Richard B. Barker, Esq.,* and *J. S. Y. Ivins, Esq.,* for the petitioner.

*Bruce A. Low, Esq.,* for the respondent.

### OPINION.

TRAMMELL: The principal issue in this case is whether or not petitioner realized taxable income in 1928 from the transactions with its landlord, the Terminal Corporation, whereby the petitioner transferred the Alamo Street property to the Terminal Corporation and the latter canceled the balance of the petitioner's indebtedness.

In 1928 the petitioner owed the Terminal Corporation $107,880.77 for unpaid rent and interest thereon. It was then insolvent and unable to pay this indebtedness. An agreement was reached by which the petitioner was enabled to continue its business and the Terminal Corporation to rent its warehouse, but at a reduced rental.

The petitioner's indebtedness was discharged by its transferring to the Terminal Corporation the Alamo Street property, which had a depreciated cost to petitioner of $39,513.42, and was subject to a mortgage of $25,000, which the creditor corporation assumed. At the time of the transfer, the petitioner's equity in the property was $14,513.42. The Terminal Corporation canceled the balance of the indebtedness in the amount of $93,367.35, which amount the respondent contends constitutes taxable income to the petitioner.

In our opinion, the legal effect of the transaction, whereby the petitioner transferred real estate to the principal creditor in full satisfaction of its indebtedness, was to constitute such transfer a sale of the real estate, on which sale the petitioner realized taxable profit in an amount equal to the difference between the depreciated cost of the real estate and the aggregate amount of indebtedness canceled. See *Abe Ackerman*, 27 B. T. A. 413; also *Twin Ports Bridge Co.*, 27 B. T. A. 346.

Petitioner contends that the gain is the difference between the depreciated cost of the property and the fair market value when transferred in cancellation of the debt. But as we view the transaction the property was transferred in cancellation of the debt, not applied to the extent of its fair market value and the balance of the debt forgiven. Our view is in accordance with written instruments of the parties. It is not shown that these instruments did not fairly set out what was done. The contract does not refer to a forgiveness of a debt, but to a cancellation thereof in consideration of the transfer. In a sale of property the taxable gain is the difference between the selling price and depreciated cost, when acquired after March 1, 1913, not the difference between the cost less depreciation and the

value of the property. What the acquiring company laid out for the acquisition of the property would be the basis in its hands on a subsequent sale.

This case does not involve a cash payment of a part of a debt and the forgiveness of the balance, a general composition of creditors, nor bankruptcy, nor a situation where the debtor was still insolvent or left without assets after the debt cancellation or forgiveness, but a transfer of property in cancellation of the entire debt, leaving the taxpayer solvent. The bookkeeping entries of the creditor, in which it set up the appraised value of the property on its books as being a pro tanto satisfaction of the debts, are contrary to the agreement of the parties that the entire debt was to be canceled by the property transfer. In any event it is the debtor before us, not the creditor. The petitioner, being the debtor, treated the excess over cost of property less depreciation as being taxable income.

We see no valid distinction between this case and our decision in the case of *Twin Ports Bridge Co.*, *supra*, in which we held that where a corporation pays its debts with stock, the difference between the cost of the stock and the amount of debts satisfied constitutes income. It is true that in this case the taxpayer was insolvent prior to the transaction, but solvent afterwards. In that case the taxpayer was solvent both before and after the transaction. However a corporation while insolvent may still have income. The fact that a taxpayer may in prior years have operated at a loss and its debts exceed its assets does not prevent it in the taxable year from making a taxable gain by disposing of property for more than its cost.

But even treating the case for the sake of argument on the principle upon which the taxpayer relies, that is, a partial forgiveness of debt, in our opinion the taxpayer can not prevail. Assets were left cleared of debts to the extent of the amount forgiven and the taxpayer was enriched to that extent. If a taxpayer had real estate worth $10,000, with a mortgage thereon of $5,000, it would seem that by canceling the mortgage, leaving the property free, it would be equivalent to the receipt of cash to the extent of the mortgage, whether the taxpayer then be solvent or insolvent. The case of *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and the case of *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, as explained in the *Kirby Lumber Co.* case, support this view. The use of the capital asset, to wit its property which it used in having its indebtedness canceled or reduced, involves the use of capital in securing its enrichment to the same extent, in our opinion, as the use of money by the Kirby Lumber Company in buying back its bonds issued at par for less, thus giving rise to taxable gain.

See also the recent decision of the United States Circuit Court of Appeals for the First Circuit in *Commissioner* v. *Coastwise Transportation Corp.*, 62 Fed. (2d) : 332, rendered after the *Kirby Lumber Co.* case, *supra*, and which reversed the decision of the Board at 22 B. T. A. 373, that the taxpayer derived no income from the purchase of two of its serial notes at less than face value.

In the view we take that the canceled indebtedness in excess of the depreciated cost of the real estate constituted income to the petitioner for the year 1928, it becomes unnecessary to consider the petitioner's allegations in respect of the application of its net losses for 1926 and 1927, based upon the theory that the cancellation of the indebtedness did not constitute income, since the respondent applied said net losses against 1928 net income before computing the deficiencies.

The parties have stipulated that the petitioner is entitled to an additional deduction from gross income for 1929 on account of expenditures for club dues, as set out in our findings of fact. Said stipulation will be given effect in redetermining the deficiency for that year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: I can not agree that the transaction by which the petitioner transferred the Alamo Street property to its principal creditor constituted a sale of that property upon which the petitioner realized a taxable profit of $93,367.35. The facts do not warrant that conclusion. The petitioner had operated at large losses from the date of its organization. Its capital of $200,000 had been entirely wiped out. At December 31, 1927, it had on hand assets of a value of $152,470.16 and had accounts payable of $178,941.01. In order that the petitioner might continue in business its principal creditor agreed to cancel a part of its claim. The petitioner owned property on Alamo Street, which had a depreciated cost to the petitioner of $39,513.42 and which was subject to a mortgage of $25,000. The agreed fair market value of the property in 1928 was $42,507.20. The principal creditor took over this property, assumed the mortgage thereon, and canceled the balance of its claim against the petitioner. To hold that the petitioner realized a taxable profit of $93,367.35 does violence to the principle that the income tax law shall be interpreted in accordance with truth and substance.

The petitioner admits that it realized a profit upon the transaction represented by the difference between the depreciated cost of

its equity in the Alamo Street property and its fair market value at the date of transfer, or a profit of $2,988.78. It contends, however, that the difference between $2,988.78 and $93,367.35 was a cancellation of indebtedness from which it derived no taxable income. I think its contention is well founded. A reduction of debt liability is not necessarily a realization of taxable income. *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170; *Meyer Jewelry Co.*, 3 B. T. A. 1319; *United States* v. *Oregon-Washington R. R. & Nav. Co.*, 251 Fed. 211; *Commissioner* v. *Simmons Gin Co.*, 43 Fed. (2d) 327; *Burnet* v. *John F. Campbell Co.*, 50 Fed. (2d) 487; *Commissioner* v. *Rail Joint Co.*, 22 B. T. A. 1277; affd., 61 Fed. (2d) 751.

In each case the facts must be considered. In *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, the facts are that the Lumber Company had gained $137,521.30 in cash within the taxable year by redeeming certain of its bonds for that amount less than it had received for the bonds upon the issuance earlier in the year. By the transaction the company's cash assets were increased by $137,521.30. The Supreme Court said that the amount was " an accession to income " which was " realized within the year." No facts obtain in the instant proceedings which bear a close analogy thereto. The proper interpretation of the *Kirby Lumber Co.* decision is in my opinion indicated by the decision of the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *Rail Joint Co.*, *supra*, in which the decision of this Board at 22 B. T. A. 1277, was affirmed. It was held in that case both by the Board and by the Court that the reduction of the liability was not an " increment to its [petitioner's] assets."

Manifestly if a debtor turns over to his creditor all of his property, which is only a fractional part of the debt owed by him, in settlement of his debt, the debtor derives no taxable income from the transaction. Nothing is received which answers to the definition of " income " laid down by the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189. I can not see, in the instant proceedings, that the petitioner has had any " increment to its assets " through the cancellation of a portion of its indebtedness in 1928. At most it realized only a profit measured by the difference between the depreciated cost of its equity in the Alamo Street property and the fair market value of that property at the date of sale.

In my opinion the petitioner's accounts should be restated for the years 1926, 1927, and 1928, and the net losses for the years 1926 and 1927, to the extent that they were caused by the accrual of unpaid rent which was canceled in 1928, should be restated in accordance with section 272 (g) of the Revenue Act of 1928.