Peter W. DeFelice and Norma G. DeFelice v. Commissioner.
De Felice v. Commissioner
Docket No. 879-65.
United States Tax Court
T.C. Memo 1966-158; 1966 Tax Ct. Memo LEXIS 127; 25 T.C.M. (CCH) 835; T.C.M. (RIA) 66158; June 30, 1966
Charles Dunn, for the petitioners. Roy E. Graham, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the years 1958 and 1959 as follows: Deficiency in
Additions to tax under
income tax
Sec. 6651(a)
Sec. 6653(a)
1958
$11,837.67
$551.94
$719.30
1959
2,956.65
147.83
*129 Some of the issues raised by the petitioners were conceded by them at the trial leaving for our decision the following: 1. Whether petitioners had a gain resulting from the transfer of property to a corporation which assumed liabilities in excess of the basis of the assets transferred. 2. Whether petitioners may deduct amounts expended on the remodeling of an office building. 3. Whether petitioners are entitled to a depreciation deduction in excess of the amount determined by respondent to be allowable. 4. Whether petitioners are entitled to a medical expense deduction for depreciation on air conditioning installed in their personal residence. 5. Whether petitioners incurred a loss in excess of $1,051.50 on the sale of their former residence which had been converted to rental property. 6. Whether petitioners are entitled to deduct as a business bad debt the amount of $2,550 lent to another individual who was going into a trucking business. 7. Whether petitioners are entitled to a deduction of a business bad debt loss of $5,922.18 in 1959 because of worthlessness of an account transferred in 1958 to a corporation with an agreement that under certain circumstances it might *130 be reassigned to petitioners. 8. Whether petitioners are liable for an addition to tax under section 6651(a) for the year 1958 for failure to timely file their income tax return for that year. 9. Whether petitioners are liable for an addition to tax under section 6653(a) for each of the years 1958 and 1959 for underpayment of tax due to negligence and intentional disregard of rules and regulations. General Finding of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, residing in Tulsa, Oklahoma, filed joint Federal income tax returns for the years 1958 and 1959 with the district director of internal revenue at Oklahoma City, Oklahoma. Issue 1 Gain from Assumption of Liabilities by Corporation Findings of Fact Peter W. DeFelice (hereinafter referred to as Peter) prior to 1958, was the owner of a sole proprietorship which was an advertising agency offering its services to the commercial and political fields. The sole proprietorship was known as the DeFelice Advertising Agency. Norma G. DeFelice (hereinafter referred to as Norma) worked in the business as a bookkeeper but did not perform management functions. On *131 October 1, 1958, petitioners agreed to transfer all the assets and liabilities of Peter's sole proprietorship to a newly formed corporation. Peter, Norma and another individual on October 1, 1958, entered into a "Subscription and Purchase Agreement" referring to the three of them as "stockholders" in a corporation to be formed for the purpose of operating the business formerly owned by Peter known as the DeFelice Advertising Agency, Inc. The agreement further provided that Peter "does hereby transfer, sell, set over and assign to the said Corporation, all the assets of the said Corporation at the total book value thereof." After the incorporation of the DeFelice Advertising Agency, Inc., Peter owned the controlling interest. At the time the assets were transferred to the corporation, petitioners expected rapid expansion of their business resulting from the fact that the advertising agency had participated in a successful gubernatorial campaign. Peter considered that there was a valuable asset transferred to the corporation in the nature of good will because of this participation by this advertising business. The Subscription and Purchase Agreement provided "that the corporation shall *132 assume all accounts payable and other liabilities of the business." The assets and liabilities transferred to the corporation on October 1, 1958 were: Assets Transferred
Cash
$ 5,309.69
Miscellaneous
165.29
Accounts receivable
14,400.26
Furniture & Fixtures
(less reserves)
2,573.08
Automobiles
6,216.00
Total Assets Transferred
$28,664.32
Liabilities Assumed
Accounts payable
$30,331.16
Advance payments
9,375.00
Loans
6,263.17
Notes
6,805.44
FICA tax
37.16
Withholding tax
256.90
Total liabilities
$53,068.83 The assets and liabilities were listed at these same values on the books and records of the corporation. On September 21, 1961, the corporation filed a voluntary petition in bankruptcy in the United States district court for the northern district of Oklahoma. No liability which had been assumed by the corporation on October 1, 1958, was listed on the schedules of debts and claims attached to such petition. Petitioners reported no gain on the transfer of assets and liabilities to the DeFelice Advertising Agency, Inc. on their income tax return for the calendar year 1958. Respondent determined that the liabilities assumedby *133 the corporation, DeFelice Advertising Agency, Inc. exceeded the basis of the assets transferred thereto by $24,404.51 and that this amount constitutes a gain to petitioners. Respondent explained this determination in the following language: (e) It is determined that you realized a gain of $24,404.51 on the exchange of the assets and liabilities of DeFelice Advertising Agency, an individual proprietorship, to a corporation for all of the stock of that corporation. The sum of the amount of the liabilities assumed plus the amount of the liabilities to which the property is subject is $53,068.83 and exceeds $28,664.32, the basis of the assets by $24,404.51. Under the provisions of Section 357(c) of the Internal Revenue Code of 1954, $1,620.46 is treated as a gain from the sale or exchange of a capital asset * * * and $22,784.05 is considered ordinary income. Income is accordingly increased $22,784.05. Opinion Section 351 provides that no gain or loss shall be recognized if property is transferred by one or more persons to a corporation solely in exchange for stock or securities in such corporation and immediately after the exchange, such person or persons are *134 in control of the corporation. Section 357(c) provides, however, that to the extent that the amount of liabilities assumed and to which the transferred assets are subject exceeds the adjusted basis of the property transferred, the excess shall be considered as gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be. Respondent determined that the assets and liabilities of petitioners' sole proprietorship were transferred to the corporation solely in exchange for stock of the corporation and petitioners have not shown and do not contend to the contrary. Peter whose assets were transferred to the corporation was in control of the corporation after the transfer. Therefore, the transfer was squarely within the provisions of section 351. The facts show that the liabilities transferred to the corporation exceeded the basis of the assets transferred to it by the petitioners by the amount of $24,404.51. These facts bring the transaction precisely within the provisions of section 357(c). See *135 N. F. Testor, 40 T.C. 273 (1963) and Arthur L. Kniffen, 39 T.C. 553 (1962). Petitioners argue that at the time of incorporation and transfer Peter, the transferor, was insolvent, and therefore the assumption of liabilities by the corporation did not generate taxable income as to him because there was no release of assets. Petitioners have not shown that either one or both of them were insolvent at any time. Petitioners presented only the oral testimony of Peter, based on a document he prepared a week before the trial of this case purporting to be a "financial statement" of Peter as of October 1, 1958. This "financial statement" shows the following: Assets
DeFelice Advertising, Inc. stock
$ 500.00
One-half interest in family residence
14,500.00
$15,000.00
Liabilities
Taxes Payable
$ 280.47
One-half interest in mortgage on resi-
dence
9,668.85
Notes payable
614.08
Net Worth
4,436.60
$15,000.00 Petitioners claim that Peter's creditors could not have gone against the homestead and therefore he had no net worth at all which could be reached by creditors. There is no explanation of why, even under petitioners' *136 theory of creditors' rights, the mortgage on the home would not have been an enforceable lien against the home. The other liabilities shown are small. No note is shown as an asset, whereas Peter apparently had amounts due to him at October 1, 1958. (See Issue 6). Petitioners have not shown that they were at any time unable to meet their obligations. They were engaged in a business which provided them each with a salary. Petitioners have not shown how they arrived at the value of $500 for the DeFelice Advertising Agency, Inc. stock. Peter testified concerning the great hopes he had for his business in October 1958, and the good will of the business at that time. Certainly, he would have considered his share of the business to have a fair market value far in excess of $500 at October 1, 1958. Also, petitioners had sold a former residence in May or June 1958. (See Issue 5) There is no explanation for the absence of a reflection of the amount received for that asset in his "financial statement" as of October 1, 1958. We need not decide whether petitioners' theory would be valid if they had proved that Peter was insolvent before and after the transfer of assets to the corporation on *137 October 1, 1958. The cases cited by petitioners in support of their position deal with income from the cancellation of indebtedness. We are here concerned with assumption of liabilities by a corporation and not with cancellation of indebtedness. Since none of the liabilities assumed by the DeFelice Advertising Agency, Inc., on October 1, 1958, were shown by it to be liabilities on September 21, 1961, the fair presumption is that the corporation paid all of the liabilities of petitioners which it assumed on October 1, 1958. The concepts of assumption of liabilities by a corporation and cancellation of indebtedness are not totally dissimilar, but they are different. Petitioners have not presented any argument on the appropriateness of applying the holdings of cases dealing with the cancellation of indebtedness to situations concerned with the provisions of section 357(c). Petitioners cited several cases to support their position. All of these cases but one involve the cancellation of a debt by the creditor of the taxpayer. See *138 Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 70 F. 2d 95 (C.A. 5, 1934) reversing 27 B.T.A. 651 (1933); Haden Co. v. Commissioner, 118 F. 2d 285 (C.A. 5, 1941) affirming a Memorandum Opinion of this Court; Porte F. Quinn, 31 B.T.A. 142 (1934); and Lakeland Grocery Co., 36 B.T.A. 289 (1937). The other case cited by petitioners, Texas Gas Distributing Co., 3 T.C. 57 (1944), involved the sale of assets by a taxpayer to a purchaser who assumed certain liabilities of the taxpayer. The major liability was a $400,000 note which the purchaser of the taxpayer's assets agreed to acquire and upon consummation of the sales contract to cancel and deliver to the taxpayer. The taxpayer upon consummation of the sale did receive its $400,000 note marked "Cancelled" by the purchaser's nominee. The remaining liabilities assumed by the purchaser did not exceed the taxpayer's basis of the assets sold. Therefore, the only source of income in the transaction there involved other than a small amount of cash which was reported by the taxpayer as income was the cancellation of an indebtedness. On its facts, *139 Texas Gas Distributing Co., supra, like the other cases cited by petitioners is distinguishable from the situation here present. All of the cases cited by petitioners involved the question of whether an amount was income under the general section defining income, the predecessors of section 61 of the Internal Revenue Code of 1954. We are here concerned with section 357(c), which deals with specific circumstances. Rules which have been applied to the general income provisions should not necessarily be applied to a specific statutory provision. We sustain respondent's determination with respect to this issue. Issue 2. Amounts Expended on Office Building Findings of Fact The office used by petitioners in conducting their advertising business was located in a building owned by Norma. The advertising business paid rent for use of the building. The building was remodelled in 1958. This building was not part of the assets transferred to the corporation on October 1, 1958. Petitioners deducted $856.78 as repair expense and $3,570.92 as office expense on their 1958 return. Respondent in his notice of deficiency disallowed $211.48 of the claimed deduction *140 for repairs of $856.78 and disallowed $1,617.46 of the claimed deduction for office expense of $3,570.92 with the explanation that these portions of the claimed expenditures were for capital improvements to the building and were not deductible expenses. Opinion The nature of the repairs or improvements made to the office building is not clear from the record. There is no evidence as to the amounts spent on any particular repair or improvement. Peter testified that partitions were moved. Other work consisted of painting, roof repair, installation of a water heater, wiring for air conditioning and carpeting. Respondent did not disallow the total amount of the repair deduction claimed or of the office expense deduction in which category petitioners apparently included a portion of the cost of remodelling the office building. The burden is on petitioners to show that respondent erred in disallowing portions of the deductions claimed. Petitioners' evidence is vague and incomplete, and they have not proved error on respondent's part. In fact, the evidence shows that some of the remodelling was of a capital-improvement nature. Because of petitioners' failure of proof, we sustain respondent's *141 determination in disallowing to the extent he did petitioners' claimed deductions for repairs and office expense. Issue 3. Depreciation Findings of Fact Petitioners claimed the following deductions for depreciation on their income tax return for the calendar year 1958: Office Equipment
$246.90
Automobile
641.25
Automobile
634.13
Building
630.00
Dwelling
265.45
The first three of these items were listed on the depreciation schedule of Schedule C (profits (or loss) from business or profession) as assets used in the advertising business. These assets were transferred to the corporation on October 1, 1958. The deductions claimed by petitioners were the amounts of depreciation computed for a full year. The "Building" listed on Schedule G (the depreciation schedules of the individual return) was a building, enclosed by a fence, owned by Norma and rented to the advertising business. Petitioners claimed depreciation for an entire year on the building and fence. On their income tax return they showed an acquisition date for the building of 1957 and an acquisition date for the fence of 1958. The "Dwelling" listed on Schedule G of petitioners' *142 1958 income tax return was a private residence of petitioners which they converted to rental property in late 1957. This dwelling was rented until May 29, 1958 when petitioners sold it. On their income tax return petitioners used a cost basis of $12,766 in computing depreciation on this "Dwelling." Respondent disallowed all the depreciation claimed by petitioners on assets used in their advertising business, the items listed in Schedule C. He determined that the office building was acquired on April 1, 1958, and the fence on July 1, 1958 and therefore allowed depreciation on the building for 9 months and on the fence for 6 months. Respondent determined that the basis of the rented "Dwelling" was its fair market value at the date it was converted to rental property, which he determined to be $11,500. He computed depreciation for the 5 months prior to the date of the sale of this property at $187.50, using a basis of $11,500 and a 20-year life. Opinion Respondent in his notice of deficiency disallowed the entire depreciation claimed on Schedule C of petitioners' income tax return for 1958. The assets listed on this Schedule were transferred on October 1, 1958, by petitioners to *143 the corporation. In his brief, respondent argues that depreciation is not allowable to petitioners for the last 3 months of 1958 because of the property being transferred on October 1, 1958 to the corporation. Respondent's disallowance in full of depreciation in the year of sale was apparently for the reason that the property was disposed of at a price in excess of its basis to petitioners. The disallowance of depreciation to petitioners for the first 9 months of 1958 is in error under the decision in Fribourg Navigation Co., Inc. v. United States, 383 U.S. 272 (1966) as respondent apparently recognizes. Petitioners are not entitled to a deduction for depreciation for the entire year, as claimed, but are entitled to depreciation on the assets used in the advertising business for the portions of the year during which they owned the assets prior to the transfer of these assets to the corporation on October 1, 1958. We sustain respondent's determination with respect to a disallowance in part of the depreciation deduction claimed by petitioners on the "Building" and "Dwelling" listed on Schedule G of their 1958 income tax return. Petitioners have offered no evidence to show *144 error in that determination. Issue 4. Medical Expense Deduction Findings of Fact In 1958 petitioners expended $2,440 for air conditioning for their newly-constructed home. A doctor who had treated Peter for a heart attack advised him to have his house air conditioned. In the area in which this house was located it is customary to have central air conditioning in houses of the quality of petitioners' home. Petitioners estimated the value of their home to be $29,000 on October 1, 1958, after the installation of the air conditioning. Petitioners paid approximately $26,000 for the house when they acquired it less than a year earlier. Opinion Petitioners listed total medical and dental expenses of $1,129.68 and claimed a deduction of $587.77. Respondent disallowed the entire amount of the deduction claimed. Petitioners contend that respondent erred in disallowing depreciation and operating costs of air conditioning. Petitioners paid $2,440 for air conditioning. The air conditioning increased the value of petitioners' home by $3,000. This Court held in *145 Raymon Gerard, 37 T.C. 826 (1962) that the cost of air conditioning which was required for medical reasons was deductible to the extent that it did not increase the value of the property. Respondent's Income Tax Regulations provide: Sec. 1.213-1 Medical, dental, etc. expenses. * * *
(e)(1)(iii) Capital expenditures are generally not deductible for Federal income tax purposes. See section 263 and the regulations thereunder. However, an expenditure which otherwise qualifies as a medical expense under section 213 shall not be disqualified merely because it is a capital expenditure. * * * Moreover, a capital expenditure for permanent improvement or betterment of property which would not ordinarily be for the purpose of medical care (within the meaning of this paragraph) may, nevertheless, qualify as a medical expense to the extent that the expenditure exceeds the increase in the value of the related property, if the particular expenditure is related directly to medical care. * * * The increase in value of petitioners' home exceeded the cost of the air conditioning and, thus, no part of the cost of the air conditioning is deductible as an expense. We need not, therefore, *146 decide whether petitioners have established that the expenditure for the air conditioning was directly related to medical care. In any event, it appears that the total amount of the medical expenses claimed by petitioners would not result in any deduction to petitioners since their ordinary income is to be increased by $22,784.05 for 1958. Issue 5. Amount of Loss on Sale of House Findings of Fact Petitioners had a new house constructed in 1957 and, after moving into it, rented their previous home for several months of 1957 and until they sold the rented house on May 29, 1958 for $10,750. Expenses of the sale were $734.45. Using a cost basis of $12,766, reduced by depreciation allowed or allowable of $530.90, petitioners claimed a loss on the sale of $2,219.55 [1] in their income tax return for the year 1958. Respondent has reduced the allowable depreciation figure by $77.95 (see issue 3) to $452.95 and also used the lower basis which was used for determining depreciation, the fair market value of $11,500 at date the property was converted to rental property, to compute the loss sustained by petitioners on the sale of the house. Using a basis of the property at the date it *147 was converted to rental property of $11,500 and deducting depreciation allowed or allowable as determined by respondent, petitioners sustained a loss on the sale of the property of $1,051.50 as determined by respondent. Opinion Respondent contends that the loss on the sale of petitioners' former residence is only $1,051.50 and that "the principal difference was attributable to the fair market value of the property at the time it was converted to rental." A loss on the sale of property by an individual is not deductible unless it is a sale of property used in a trade or business or property held for the production of income within the meaning of section 165. Property may be converted by an individual from personal use to an income-producing use. Section 1.165-9(b)(2) of respondent's regulations provides that in determining loss from the sale of residential property which has been so converted the adjusted basis shall be the lesser of fair market value at the time of conversion or its adjusted basis determined without reference to fair market value. Petitioner has presented no evidence *148 nor argument to show error in respondent's determination of the loss sustained on the sale of this property and therefore respondent's determination is sustained. Issue 6. Business or Nonbusiness Bad Debt Findings of Fact Peter loaned about $3,000 to Quebo Perna sometime in 1958 at a date which he does not remember. Perna, a long-time acquaintance, ran a service station and Peter loaned him the money because he was planning to begin a trucking business. Peter had loaned Perna money on three or four previous occasions. Peter was to be repaid this $3,000 loan and was also to have a 50 percent interest in the trucking business if that business were successful. Petitioner received some repayment from Perna and upon default in further payments brought suit and obtained a judgment in the amount of $3,900 which included in addition to the unpaid amount of the loan, interest and attorneys' fees. Attempts to collect on the judgment were unsuccessful. Petitioners claimed a deduction of $2,550 with respect to this bad debt on their 1959 income tax return. Respondent disallowed the claimed deduction except to the extent of $1,000 which he allowed as a nonbusiness bad debt. Opinion
*149 Respondent recognized the loan by Peter to Perna as a bona fide loan and also recognized that it was uncollectible in 1959. It is respondent's contention that the loan was a nonbusiness loan [2] and, accordingly, this bad debt is deductible as if it were a loss on the sale of an asset held for not more than 6 months. Section 166(d)(1). Petitioners do not contend that they were engaged in a trade or business of lending money or financing business operations. See Whipple v. Commissioner, 373 U.S. 193 (1963). A few loans of the kind made by Peter would not indicate the existence of a lending business. Peter testified that he had made three or four previous loans to Perna. The record does not show when these loans were made, their size, their terms, or whether they were repaid. The only alternative theory which petitioners might be advocating is that Peter received an interest in a business yet to *150 be formed, then loaned a sum of money to that business and that such loan was therefore proximately connected with a trade or business in which he was engaged. This theory is not supported by the evidence. No business had been begun at the time of the loan. The loan was to Perna and the record does not show that any restriction was placed on Perna's use of the moneys loaned although Peter in answer to the question "Now, for what purpose was the loan?" testified "He was to engage in the trucking business." Peter obtained a judgment against Perna which supports the conclusion that the loan was to Perna personally and not to some business in which petitioners had an interest. The evidence fails to show that Peter's loan to Perna was a business loan. We sustain respondent in his treatment of this bad debt as a nonbusiness bad debt. Issue 7. Bad Debt Deduction of Hollis Furniture Company Account Receivable Findings of Fact Among the assets totaling $28,664.32 transferred by petitioners to the corporation on October 1, 1958, was an account receivable from Hollis Furniture Company. The Subscription and Purchase Agreement provided in part: * * * that the account of Hollis Furniture *151 Company which is of doubtful value due to the fact that an assignment for benefit of creditors has been made, it to be returned to Peter W. DeFelice at the end of the first fiscal year if an amount equal to fifty per cent of said account has not been paid. * * * Unsuccessful attempts to collect this account had been made before October 1, 1958. Peter decided to transfer the account to the corporation subject to the conditions named because "with the anticipation of maybe bringing stockholders into the company, that wouldn't be a very good asset." Petitioners claimed a business bad debt loss on this account of $5,922.18 in 1959. Respondent disallowed in full this claimed deduction with the explanation: (b) It is determined that the deduction of $5,922.18 claimed on your tax return for the year 1959 as a bad debt from Hollis Furniture Co. is not allowable in whole or in part under the provisions of Section 166 of the Internal Revenue Code of 1954. Opinion There is no evidence in this case that the Hollis Furniture Company account receivable had any value at January 1, 1959. That deficiency in the evidence is sufficient to require a decision for respondent *152 because of petitioners' failure of proof. The fact that attempts to collect the account had been unsuccessful even before October 1, 1958, indicates that it may have become worthless before January 1, 1959. Since respondent on brief argues in support of his disallowance of the claimed deduction that the account did not belong to petitioners, we will examine the question of who owned the account when it became worthless if it is assumed that the account became worthless in 1959. There are four possibilities: (1) That the account was never transferred to the corporation and remained petitioners' at all times; (2) that the account was transferred to the corporation and was reassigned to petitioners on reimbursement of the corporation for its worthlessness; (3) that the account was transferred to the corporation and was reassigned to petitioners without reimbursement on its becoming worthless; or (4) that the account was transferred to the corporation and was not reassigned to petitioners at any time. The evidence concerning this issue is scant. Whether there were any collections on this account from October 1, 1958 to the "end of the first fiscal year" of the corporation is not shown *153 by the evidence. Therefore, we do not know if the condition named in the Subscription and Purchase Agreement happened or failed to happen. There is no indication that petitioners were to reimburse the corporation if the account should be returnable to them. The first possibility set forth above would result in the loss from the bad debt being petitioners' loss, but, in that case, petitioners would also have had higher income from release of liabilities in 1958, for inclusion of the asset among those listed as transferred to the corporation would have been erroneous if the asset were not transferred. A reduction in assets transferred would increase the difference between the excess of liabilities assumed over the basis of assets transferred in the year 1958. Respondent did not take this position, and neither do petitioners. To the contrary, both parties apparently agree that the asset was transferred on October 1, 1958, to the corporation. If the second possibility had occurred, petitioners would have sustained a loss by the reimbursement of the corporation for a worthless account but this would not necessarily mean that they would be entitled to bad debt deduction for income tax *154 purposes. In this case, there would perhaps be no need to alter the amount of income resulting from liabilities transferred to the corporation in 1958 since the payment to the corporation by petitioners for the account would replace the asset received. However, the record does not show that Peter was under an obligation to or did reimburse the corporation for this account. If the third possibility suggested above occurred, any loss would be a loss of the corporation if the account were worthless when reassigned to Peter. Also petitioners would receive nothing of value on the reassignment to them of a worthless asset and since the asset was worthless when petitioners received it they could not have a loss from its becoming worthless. The fourth alternative, that there was no reassignment, is also plausible on the record. The Subscription and Purchase Agreement provided for reassignment at the end of the first fiscal year if less than 50 percent of the account had been collected, but we are not informed whether there were any collections, whether the account was reassigned and, if it was, whether any part of it was still collectible at reassignment and whether it became wholly or *155 partially worthless after that time and before the end of 1959. The record does not show that the account was reassigned to Peter so it could be concluded by weighing this failure of proof against petitioners, that it was not reassigned. Obviously, petitioners could have no loss on what was not theirs. We sustain respondent's disallowance of this claimed deduction by petitioners because of petitioners' failure of proof. Issues 8 and 9. Additions to Tax For Late Filing and for Negligent Filing Findings of Fact Petitioners' income tax return for 1958 was dated April 28, 1959 and was received by the district director of internal revenue at Oklahoma City on May 1, 1959. Petitioners' return for the calendar year 1958 was due on April 15, 1959. Respondent in his notice of deficiency determined an addition to tax of $551.94 under section 6651(a) for failure to file the return within the time prescribed by law. Petitioners' income tax return for the year 1958 failed to report the transfer of the assets of Peter's proprietorship to the corporation and contained errors in reporting depreciation items as heretofore set forth. Petitioners' income tax return for 1959 contained no reporting *156 errors except for a small understatement of depreciation as distinguished from claiming deductions for certain items which respondent determined and we have concluded were not properly deductible. For both 1958 and 1959 respondent determined that part of petitioners underpayment of tax was due to negligence or intentional disregard of the rules and regulations. He therefore determined additions to tax of $719.30 for 1958 and of $147.83 for 1959 under section 6653(a). Opinion Respondent's determination of additions to tax under sections 6651(a) and 6653(a) is sustained for the year 1958. Section 6651(a) provides that * * * unless it is shown that such failure to file [on time] is due to reasonable cause and not due to willful neglect, there shall be added [a five percent addition to tax in the first month overdue] * * * Since petitioners have given no reason at all for the late filing of their 1958 income tax return, they have not shown that their failure to file the return within the time prescribed by law was due to reasonable cause. The burden is on the taxpayer also to prove that the respondent erred in determining an addition to tax for negligence, *157 D. Courtney, 28 T.C. 658, 669 (1957). Petitioners have offered no explanation of the many errors in their return for the year 1958 which on their face seem to be negligent errors. Among the negligent errors on petitioners' 1958 return are their failure to show the transferring of all the assets of Peter's business to a corporation, their claiming depreciation deductions for a full year on the assets transferred and their using the wrong acquisition date in computing depreciation on certain other assets. Petitioners have offered no explanation at all for these obvious inconsistencies and inaccurate statements. We, therefore, sustain respondent in his determination of addition to tax in 1958 under section 6653(a). The situation is different for the year 1959. Petitioners' return for that year is in evidence. It accurately reports their income. Some deductions are claimed which as a matter of law are erroneous. However, the nature of the claimed deductions are fully explained. There is no negligence or intentional disregard of rules in making the type of claim for deductions which petitioners made here, even though, as a matter of law, they are not allowable. We, therefore, *158 hold that respondent was in error in determining an addition to tax for 1959 under section 6653(a). Decision will be entered under Rule 50. Footnotes
1. These figures actually produce a loss of $2,215.55, but the discrepancy is not explained.↩
2. Sec. 166(d)(2) defines a nonbusiness debt as - a debt other than - (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩