T.C. Summary Opinion 2007-19

UNITED STATES TAX COURT

STUART RAYMOND QUARTEMONT AND VELVET FENNER QUARTEMONT,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3584-06S.              Filed February 6, 2007.

Stuart R. Quartemont, pro se.

David Cao, for respondent.


JACOBS, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a $27,326 deficiency in petitioners' 2003 Federal income tax, as well as a penalty of $5,465 under section 6662(d). Respondent subsequently conceded that the section 6662(d) penalty was not applicable. Consequently, the only issue remaining for decision is whether petitioners may exclude the value of their residence, which is exempt property for State bankruptcy law purposes, in determining whether they were insolvent for purposes of section 108(a)(1)(B), pertaining to exclusion from discharge of indebtedness income.

## Background

This case was submitted fully stipulated, and the stipulated facts are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time petitioners filed the petition, they resided in College Station, Texas.

Beginning in 2001, petitioners encountered financial difficulty stemming from an unrelated party's default on an unsecured loan of $100,000 made by petitioners in 2000. In connection with such loan, petitioners incurred substantial amounts of credit card debt, believing that they would be able to repay their debts to the credit card companies when their debtor

repaid the loan owed to them. By the time petitioners realized, in 2001, that the loan they had made in 2000 would never be repaid, petitioners had incurred more than $100,000 in credit card debt.

Petitioners considered filing for bankruptcy, but decided instead to negotiate with the credit card companies to extinguish their debts by paying a lesser sum than was owed. Petitioners succeeded in making these arrangements in 2002 and in 2003. The amount by which their credit card debt exceeded their actual payment (i.e., the amount of relief from indebtedness) was $77,265 in 2003, the tax year in issue.[1] Petitioners did not include this amount in income for 2003. Respondent determined that such discharge of indebtedness should have been included in income and accordingly determined a deficiency in petitioners' 2003 Federal income tax.

## Discussion

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the burden of proving an error is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[1]The cancellation of indebtedness occurred on two occasions: Feb. 3, 2003, in the amount of $62,040 and May 12, 2003, in the amount of $15,225.

Gross income is defined in section 61(a) as all income from whatever source derived, and income from discharge of indebtedness is specifically included in the definition of gross income.  Sec. 61(a)(12).

The Supreme Court long ago articulated the principle that increases in net worth from forgiveness or cancellation of indebtedness give rise to gross income, United States v. Kirby Lumber Co., 284 U.S. 1 (1931), but there are recognized exceptions to this general principle.  The Court of Appeals for the Fifth Circuit, to which this case would be appealable if it had not been heard pursuant to section 7463, was among the first Courts of Appeals to develop an "insolvency exception", in Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 70 F.2d 95 (5th Cir. 1934), revg. 27 B.T.A. 651 (1933).

In Dallas Transfer & Terminal Warehouse Co. v. Commissioner, supra at 96, the taxpayer's relief from indebtedness did not result in gross income where he was insolvent both before and after the debt was discharged.  The court stated:

> This [relief from indebtedness] does not result in the
> debtor acquiring something of exchangeable value in addition
> to what he had before.  There is a reduction or
> extinguishment of liabilities without any increase of
> assets.  There is an absence of such a gain or profit as is
> required to come within the accepted definition of income.
> Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed.
> 521, 9 A.L.R. 1570; Merchants' L. & T. Co. v. Smietanka, 255
> U.S. 509, 519, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305.
> It hardly would be contended that a discharged insolvent or
> bankrupt receives taxable income in the amount by which his

provable debts exceed the value of his surrendered assets. The income tax statute does not purport to treat as income what did not come within the meaning of that word before the statute was enacted. * * * [Id.]

Section 108, Income from Discharge of Indebtedness, codifies the result reached in Dallas Transfer, and identifies in subsection (a), Exclusions From Gross Income, four occasions in which discharge of indebtedness is not included in gross income. The instant case involves the exception found in section 108(a)(1)(B), which provides:

> (1) In general.--Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) or indebtedness of the taxpayer if --
>
> * * * * * * *
>
> (B) the discharge occurs when the debtor is insolvent * * *

The parties in this case do not agree on whether petitioners were insolvent at the time the discharge of indebtedness occurred. Resolution of the parties' disagreement turns on the calculation, for purposes of section 108(d)(3), of the value of petitioners' assets prior to the discharge of their debt to the credit companies.

Insolvency is defined in section 108(d)(3) as "the excess of liabilities over the fair market value of assets." Petitioners contend that property that would be exempt from creditors' claims under State law in bankruptcy proceedings is not taken into account in determining the value of one's "assets" for purposes

of section 108(d)(3).  The only such exempt property in this case is petitioners' house.  The fair market value of petitioners' house immediately before any discharge of indebtedness was $335,110.  Petitioners' house was encumbered by a mortgage in the amount of $189,354.

If petitioners' house is included as an asset (and the encumbering debt is included as a liability) in the insolvency calculation, then petitioners were not insolvent either before or after the forgiveness of debt,[2] and such discharge of indebtedness is includable in their gross income.  If, on the other hand, the house is not included as an asset (and any debt thereon is not included as a liability), then petitioners were insolvent both before and after the forgiveness of debt (on both the February and May occasions), and the discharge of indebtedness is not includable in their gross income.

In Carlson v. Commissioner, 116 T.C. 87 (2001), after a thorough examination of the statutory history of section 108, this Court found that Congress chose not to define insolvent to exclude exempt assets.  We held that the word "assets" as used in section 108(d)(3) includes assets exempt from the claims of creditors under applicable State law.  Petitioners argue that our

---

[2]This would be the case whether the February or May occasion is considered.

holding in <u>Carlson</u> produces an anomalous result, in the light of other provisions of section 108.

Section 108(a)(1)(A) provides that gross income does not include "any amount which * * * would be includable in gross income by reason of the discharge * * * of indebtedness * * * if the discharge occurs in a title 11 case". Therefore, petitioners point out, under the <u>Carlson</u> rationale, a taxpayer who declares bankruptcy would not be required to include discharge of indebtedness in gross income, whereas a taxpayer seeking to pay his debts and avoid bankruptcy would potentially find himself burdened with additional tax as a consequence. Petitioners are correct in this description of the statutory regime as determined under <u>Carlson</u>. However, consistent with congressional purpose in according a debtor coming out of bankruptcy a "fresh start" and leaving him unburdened with an immediate tax liability, <u>Carlson v. Commissioner</u>, <u>supra</u> at 95, we see nothing anomalous in a statutory framework that simultaneously requires solvent taxpayers, like petitioners, to pay taxes according to the usual formula.[3] Furthermore, not following our precedent in <u>Carlson</u> would produce anomalous results.

_____

[3]We note that sec. 108(a)(3) limits the amount of discharged indebtedness that is excludable from gross income under the insolvency provision to the amount by which the taxpayer is insolvent. No such limitation applies when discharge occurs in a title 11 case, such being another example of the statutory framework that distinguishes between bankrupt and nonbankrupt taxpayers.

In Hunt v. Commissioner, T.C. Memo. 1989-335, decided with respect to a taxable year prior to the effective date of section 108(a)(1)(B) and (d)(3), we held, as petitioners wish us to hold today, that assets exempt from the claims of creditors by State law were excluded from the definition of assets for purposes of determining whether a nonbankrupt debtor was insolvent.  This entailed our holding that exempt assets included assets that, in the event of bankruptcy, would be protected from the reach of creditors under State exemptions, and not Federal exemptions, even though (1) State law permitted debtors to elect either State exemptions or Federal exemptions, and (2) Federal exemptions would be more beneficial.  In furtherance of this holding, we noted:

> While this conclusion may lead to different results for taxpayers who actually file for bankruptcy and those who do not, we note that different answers also result from those debtors who file for bankruptcy and reside in different states. The reason for the lack of consistency is twofold. First, the Federal exemptions must be elected.  Second, many states do not allow their residents to choose Federal exemptions over those offered by the state.  Therefore, no matter what path we choose today [in deciding whether state exemptions or Federal exemptions are to be used], we still cannot guarantee nationwide uniformity in determining which assets are exempt from the claims of creditors when making a determination of solvency. [Fn. ref. omitted.]

Excluding assets exempt under State bankruptcy law from the section 108 definition of assets would result in inconsistencies among taxpayers in different States that have different exemption categories or amounts, another anomaly.  In any event, section

108 was amended by the Bankruptcy Tax Act of 1980, Pub. L. 96-589, section 2(a), 94 Stat. 3389, to include a definition of insolvency in section 108(d)(3).  That section does not exclude exempt assets from the definition of insolvent for purposes of section 108.  The amendments also added section 108(e)(1), which provides that "Except as otherwise provided in this section, there shall be no insolvency exception from the general rule that gross income includes income from the discharge of indebtedness."  In interpreting the amended statute, we noted in Carlson that Hunt was inapplicable because it was decided before the effective date of the amendments, and that section 108 as amended required the opposite result from Hunt.  Carlson v. Commissioner, supra at 99 n.7.

Concluding, we find that petitioners were not insolvent within the meaning of section 108, either before or after their debt was discharged.  Consequently, we hold that the discharge of indebtedness income, as determined by respondent, is includable in petitioners' gross income for 2003.

To reflect respondent's concession with respect to the section 6662(d) penalty,

Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty.