50 F.3d 12
 75 A.F.T.R.2d 95-1605, 95-1 USTC P 50,191
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
James J. GEHL; Laura Gehl, Appellants
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee
 No. 94-3111.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Jan. 13, 1995.
Filed: Mar. 20, 1995.
 
 1
 Before HANSEN, Circuit Judge, GIBSON, Senior Circuit Judge, and BOGUE,* Senior District Judge.
 
 
 2
 BOGUE, Senior District Judge.
 
 
 3
 Taxpayers James and Laura Gehl (taxpayers) appeal from an adverse decision in the United States Tax Court[1] finding deficiencies in their income taxes for 1988 and 1989. For the reasons stated below, we affirm.
 
 BACKGROUND
 
 4
 Prior to the events in issue, the taxpayers borrowed money from the Production Credit Association of the Midlands (PCA). Mortgages on a 218 acre family farm were given to the PCA to secure the recourse loan. As of December 30, 1988, the taxpayers were insolvent and unable to make the payments on the loan, which had an outstanding balance of $152,260. The transactions resolving the situation between the PCA and the taxpayers form the basis of the current dispute.
 
 
 5
 Pursuant to a restructuring agreement, taxpayers, by deed in lieu of foreclosure, conveyed 60 acres of the farm land to the PCA on December 30, 1988, in partial satisfaction of the debt. The taxpayers basis in the 60 acres was $14,384 and they were credited with $39,000 towards their loan, the fair market value of the land. On January 4, 1989, taxpayers conveyed, also by deed in lieu of foreclosure, an additional 141 acres of the mortgaged farm land to the PCA in partial satisfaction of the debt. Taxpayers basis in the 141 acres was $32,000 and the land had a fair market value of $77,725. Taxpayers also paid $6,123 in cash to the PCA to be applied to their loan. The PCA thereupon forgave the remaining balance of the taxpayers' loan, $29,412. Taxpayers were not debtors under the Bankruptcy Code during 1988 or 1989, but were insolvent both before and after the transfers and discharge of indebtedness.
 
 
 6
 After an audit, the Commissioner of Revenue (Commissioner) determined tax deficiencies of $6,887 for 1988 and $13,643 for 1989 on the theory that the taxpayers had realized a gain on the disposition of their farmland in the amount by which the fair market value of the land exceeded their basis in the same at the time of the transfer (gains of $24,616 on the 60 acre conveyance and $45,645 on the conveyance of the 141 acre conveyance).[2] The taxpayers petitioned the Tax Court for redetermination of their tax liability for the years in question contending that any gain they realized upon the transfer of their property should not be treated as income because they remained insolvent after the transactions.
 
 
 7
 The Tax Court found in favor of the Commissioner. In doing so, the court "bifurcated" its analysis of the transactions, considering the transfers of land and the discharge of the remaining debt separately. The taxpayers argued that the entire set of transactions should be considered together and treated as income from the discharge of indebtedness. As such, any income derived would be excluded as the taxpayers remained insolvent throughout the process. 26 U.S.C. Sec. 108(a)(1).[3] As to the discharge of indebtedness, the court determined that because the taxpayers remained insolvent after their debt was discharged, no income would be attributable to that portion of the restructuring agreement.
 
 
 8
 On the other hand, the court found the taxpayers to have received a gain includable as gross income from the transfers of the farm land (determined by the excess of the respective fair market values over the respective basis). This gain was found to exist despite the continued insolvency in that the gain from the sale or disposition of land is not income from the discharge of indebtedness. The taxpayers appealed.
 
 DISCUSSION
 
 9
 We review the Tax Court's interpretation of law de novo. Jacobson v. Commissioner, 963 F.2d 218, 219 (8th Cir. 1992). Discussion of this case properly begins with an examination of I.R.C. Sec. 61 which defines gross income under the Code. In order to satisfy their obligation to the PCA, the taxpayers agreed to participate in an arrangement which could potentially give rise to gross income in two distinct ways.[4] I.R.C. Sec. 61(a)(3) provides that for tax purposes, gross income includes "gains derived from dealings in property." Likewise, income is realized pursuant to I.R.C. Sec. 61(a)(12) for "income from discharge of indebtedness."
 
 
 10
 There can be little dispute with respect to Tax Court's treatment of the $29,412 portion of the debt forgiven subsequent to the transfers of land and cash. The Commissioner stipulated that under I.R.C. Sec. 108(a)(1)(B),[5] the so-called "insolvency exception," the taxpayers did not have to include as income any part of the indebtedness that the PCA forgave. The $29,412 represented the amount by which the land and cash transfers fell short of satisfying the outstanding debt. The Tax Court properly found this amount to be excluded.
 
 
 11
 Further, the Tax Court's treatment of the land transfers, irrespective of other portions of the restructuring agreement, cannot be criticized. Section 1001 governs the determination of gains and losses on the sale or exchange of property. Section 1001(a) provides that "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis ..." The taxpayers contend that because the disposition of their land was compulsory and that they had no discretion with respect to the proceeds, the deeds in lieu of foreclosure are not "sales" for the purposes of section 1001. We disagree. A transfer of property by deed in lieu of foreclosure constitutes a "sale or exchange" for federal income tax purposes. Allan v. Commissioner of Revenue, 86 F.C. 655, 659-60, affd. 856 F.2d 1169, 1172 (8th Cir. 1988) (citations omitted). The taxpayers' transfers by deeds in lieu of foreclosure of their land to the PCA in partial satisfaction of the recourse debt were properly considered sales or exchanges for purposes of section 1001.
 
 
 12
 Taxpayers also appear to contend that under their circumstances, there was no "amount realized" under I.R.C. Secs. 1001(a-b) and thus, no "gain" from the land transfers as the term is used in I.R.C. Sec. 61(a)(3). Again, we must disagree. The amount realized from a sale or other disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition. Treas. Reg. Sec. 1.1001-2(a)(1). Simply because the taxpayers did not actually receive any cash proceeds from the land transfers does not mean there was no amount realized. Via the land transfers, they were given credit toward an outstanding recourse loan to the extent of the land's fair market value. This loan had to be paid back. It is clear that the transfers of land employed to satisfy that end must be treated the same as receiving money from a sale. In this case the land transfers were properly considered "gains derived from dealings in property" to the extent the fair market value in the land exceeded the taxpayers' basis in said land. I.R.C. Secs. 61(a)(3), 1001(a).
 
 
 13
 The taxpayers' primary and fundamental argument in this case is the Tax Court's refusal to treat the entire settlement of their loan, including the land transfers, as coming within the scope of I.R.C. Sec. 108. As previously stated, section 108 and attending Treasury Regulations act to exclude income from the discharge of indebtedness where the taxpayer thereafter remains insolvent. The taxpayers take issue with the bifurcated analysis conducted by the Tax Court and contend that, because of their continued insolvency, section 108 acts to exclude any income derived from the various transactions absolving their debt to the PCA.
 
 
 14
 As an initial consideration, the taxpayers read the insolvency exception of section 108 too broadly. I.R.C. Sec. 61 provides an non- exclusive list of fifteen items which give rise to income for tax purposes, including income from discharge of indebtedness. Of the numerous potential sources of income, section 108 grants an exclusion to insolvent taxpayers only as to income from the discharge of indebtedness. It does not preclude the realization of income from other activities or sources.
 
 
 15
 While section 108 clearly applied to a portion of the taxpayers' loan restructuring agreement, the land transfers were outside the section's scope and were properly treated independently. See Home Builders Lumber Co. v. Commissioner, 165 F.2d 1009, 1011 (5th Cir. 1948) ("both the solvent and the insolvent may receive profits [on a sale] and be liable for the tax thereon"); Estate of Delman v. Commissioner, 73 T.C. 15, 32 (1979) ("The insolvency exception applies only for cancellation of indebtedness income. For all other types of income, ..., the solvency of the taxpayer is irrelevant."); Danenberg v. Commissioner, 73 T.C. 370, 383-86 (1979) (taxpayer's insolvency did not preclude him from recognizing a gain or loss on the disposition of property).
 
 
 16
 There is ample authority to support Tax Court's bifurcated analysis and substantive decision rendered with respect to the present land transfers. The Commissioner relies heavily on Treas. Reg. Sec. 1.1001-2 and example 8 contained therein, which provides:
 
 
 17
 (a) Inclusion in amount realized.-(1) * * *
 
 
 18
 (2) Discharge of indebtedness. The amount realized on a sale or other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12). * * *
 
 
 19
 (c) Examples * * *
 
 
 20
 Example (8). In 1980, F transfers to a creditor an asset with a fair market value of $6,000 and the creditor discharges $7,500 of indebtedness for which F is personally liable. The amount realized on the disposition of the asset is its fair market value ($6,000). In addition, F has income from the discharge of indebtedness of $1,500 ($7,500-$6,000).
 
 
 21
 We believe the regulation is controlling and serves, along with the Estate of Delman and Danenberg cases, to provide support for the decision rendered by the Tax Court.[6]
 
 CONCLUSION
 
 22
 For the reasons stated, we affirm the decision of the Tax Court.
 
 
 
 *
 The Honorable Andrew W. Bogue, Senior United States District Judge for the Western Division of the District of South Dakota, sitting by designation
 
 
 [1]
 Honorable Theodore Tannenwald Jr
 
 
 [2]
 The Commissioner also determined that the taxpayers received income from the discharge of indebtedness measured by the extent that the PCA's forgiveness of their loan caused them to become solvent. This theory has subsequently been abandoned and the Commissioner has stipulated throughout these proceedings that the taxpayers remained insolvent following the transfers of their property and the discharge of their debt
 
 
 [3]
 Unless otherwise indicated, all statutory references are to the Internal Revenue Code (I.R.C.) of 1986 as amended and in effect during the years in issue
 
 
 [4]
 Aside from being part of the restructuring agreement, the taxpayer's transfer of $6,123 cash to the PCA has little significance for the purposes of the present appeal
 
 
 [5]
 I.R.C. Sec. 108(a)(1)(B) provides that "gross income does not include any amount which (but for this subsection) would be includable in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if ... the discharge occurs when the taxpayer is insolvent." The regulations further define the exception stating, "income is not realized by a taxpayer by virtue of the discharge ... of his indebtedness as the result of ... an agreement among his creditors not consummated under any provision of the Bankruptcy Act, if immediately thereafter the taxpayer's liabilities exceed the value of his assets." Treas. Reg. Sec. 1.61-12(b)(1)
 
 
 [6]
 Despite the technical accuracy of the decision, one wonders about the propriety of the government's exhaustive pursuit of this matter in view of the taxpayers' dire financial situation and continued insolvency