## COMMISSIONER OF INTERNAL REVENUE v. SIMMONS GIN CO.

### No. 251.

*Circuit Court of Appeals, Tenth Circuit.*

*Aug. 11, 1930.*

Morton Poe Fisher, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Chas. H. Garnett, of Oklahoma City, Okl., for respondent.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The Commissioner of Internal Revenue assessed deficiencies in income taxes against the Simmons Gin Company for the fiscal years ended April 30, 1923, and April 30, 1924.

Prior to August, 1920, the Gin Company purchased a large amount of cotton for cash. It shipped the greater part of such cotton for re-sale to two commission firms in New Orleans. Such commission firms honored drafts for large amounts in favor of the Gin Company, based upon the then market value of the cotton. Beginning in August, 1920, the cotton market declined sharply, leaving

the Gin Company insolvent and owing the commission firms sums greatly in excess of the value of such cotton held by such firms as collateral. All of the creditors of the Gin Company, except two fully secured creditors having claims of $10,000 and $3,000 and certain small creditors having claims in the total amount of $1,138.50, entered into an agreement with the Gin Company on July 1, 1921, whereby, in consideration of the Gin Company executing and securing by first mortgage on its assets, and its stockholders endorsing, notes to each creditor for a total of one-half of the amount of such creditor's indebtedness, payable in equal amounts in one, two, three and four years after such date, such creditors agreed to relinquish and cancel the other one-half of the indebtedness owing to them by the Gin Company. This agreement was carried out and resulted in the forgiveness of indebtedness aggregating $119,-927.24. The Commissioner included this amount as income in computing the Gin Company's net income for the fiscal year ended April 30, 1922. As a result of this inclusion in the Gin Company's income, the net loss reported by that company on its income tax return for that year was eliminated and a net income of $6,348.14 was disclosed. By reason of this change, there was no net loss for the fiscal year ended April 30, 1922, to be applied under section 204 of the Revenue Act of 1921 (42 Stat. 231) and section 206 of the Revenue Act of 1924 (26 USCA § 937), in reduction of the net income for the fiscal years ended April 30, 1923, and April 30, 1924, as had been claimed by the Gin Company in its returns for such fiscal years. Hence the deficiencies.

On appeal from the order of the Commissioner, the Board of Tax Appeals sustained the contentions of the Gin Company and entered judgment for no deficiencies. The Commissioner has appealed.

The question presented is—Did the forgiveness of such indebtedness result in income to the Gin Company?

In Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, the Supreme Court defined "income" as follows:

" 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets."

See also Merchants' L. & T. Co. v. Smietanka, 255 U. S. 509, 518, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; United States v. Phellis, 257 U. S. 156, 169, 42 S. Ct. 63, 66 L. Ed. 180; Taft v. Bowers, 278 U. S. 470, 481, 49 S. Ct. 199, 201, 73 L. Ed. 460, 64 A. L. R. 362.

The definition may be segregated into five parts: (1) Gain derived from capital. (2) Gain derived from labor. (3) Gain derived from capital and labor combined. (4) Profit gained through sale of capital assets. (5) Profit gained through conversion of capital assets.

In Taft v. Bowers, supra, the court said:

"The 'gain derived from capital,' within the definition, is 'not a gain accruing to capital, nor a growth or increment of value in the investment, but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested, and coming in, that is, received or drawn by the claimant for his separate use, benefit and disposal.' "

Counsel for the Commissioner cite and rely upon the following cases: Maryland Cas. Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; Alpha Portland Cement Co. v. United States, 67 Ct. Cl. 680; Great Northern Ry. Co. v. Lynch (D. C. Minn.) 292 F. 903.

In Maryland Casualty Co. v. United States, supra, it was held that, if certain reserves set aside in 1912 were excessive and were released to the general uses of the company and increased its free assets in 1913, then the amount of such excess released to the general uses of the company should be treated as income in the year 1913.

In Alpha Portland Cement Co. v. United States, supra, the taxpayer charged purchasers of its cement for bags, the charge being in excess of the cost of the bags. Upon return of the bags, the amount of the charge was refunded. The court found that the experience of the trade proved that approximately 90% of the bags were returned. It was held that it was proper to treat the profit on the remaining 10% as income, in accordance with the taxpayer's accounting practice.

In Great Northern Railway Co. v. Lynch, supra, certain unpaid obligations became barred by the statute of limitation and were written off the books of the railway company. It was held that they constituted income in the year in which they were written off.

It will be observed that, in all these cases, for the indebtedness, liability or reserve released, there accrued to the taxpayer a corresponding asset.

In the instant case, the Gin Company had no assets to offset the indebtedness that was forgiven and when such indebtedness was discharged its liabilities were decreased but its assets remained exactly the same both before and after the release of such indebtedness. There is a distinction between the release or discharge of a liability to a solvent and to an insolvent taxpayer. Suppose an insolvent had assets of the value of $10,000 and owed $100,000; that its creditors agreed to settle for $20,000 payable in four annual equal payments, evidenced by notes and secured by a mortgage on such assets. Could it be said the debtor received income in the sum of $80,000—eight times the total amount of its assets?

Since there were no assets off-setting or representing such indebtedness released, nothing was received or drawn by the Gin Company to its separate use, benefit and disposal. There was a mere diminution of loss and a "mere diminution of loss is not gain, profit, or income." Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 175, 46 S. Ct. 449, 451, 70 L. Ed. 886.

For the reasons stated, the decision of the Board of Tax Appeals is affirmed.