## TURNEY'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9964.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1942.

Rehearing Denied May 9, 1942.

---

J. L. Rasberry and Thornton Hardie, both of El Paso, Tex., for petitioners.

O. W. Hammonds, Sewall Key, J. Louis Monarch, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau Internal Revenue, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondents.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

In 1936, the tax year in question, Turney, hopelessly insolvent, was indebted to Pacific National Agricultural Corporation, in the sum of $101,866.10, secured by mortgage on cattle, livestock and equipment, having a cost basis of $9,600 and a value certainly not exceeding the debt. On October 2nd of that year, by a carefully worked out arrangement with the mortgage creditor, he surrendered the security to it, and received in return, a cancellation of his indebtedness.

The respondent determined that the transaction constituted a sale of the cattle and equipment for a price equal to the amount of the debt, and that since the property had a cost of only $9,600 there was a taxable gain of $92,266.10. The board agreed with this view and entered its order accordingly.

The taxpayers are here insisting that the transaction was not a sale of property for profit but merely a surrender by an insolvent, of property encumbered by a debt he could not pay, and that both upon reason and authority, such a transaction did not result in a taxable gain. We agree. These are the facts as stipulated and testified to by the only witness, Fletcher, Turney's partner in the ranching enterprise. In 1936, Ætna Life Insurance Company, which held a mortgage of $250,000 on Turney's ranch, foreclosed it and bid the property in, for the principal sum, crediting this on its debt and leaving accrued interest and accrued taxes unpaid. In the first part of October, pursuant to negotiations with the Agricultural Credit Corporation, which was pressing for payment of its mortgage debt on the cattle, an understanding was reached between the partners and their creditor, "that we were settling the debt due and adopting the form of a bill of sale to make that effective." [1] Pursuant to that understanding, Turney, in October, executed a bill of sale of the cattle, and an agreement which recited: (1) That the bill of sale had been executed in consideration of the cancellation of the indebtedness; (2) that the debtor estimated that the property transferred was equal in value to the indebtedness; (3) that though the bill of sale declared that the notes had been delivered to the debtor, nevertheless, it was agreed that they had not been but would be delivered later; (4) should it be deemed legally necessary for the creditor, in order to complete its title to the property conveyed by the bill of sale, to foreclose the mortgage lien now existing on and against it, all expenses in connection therewith shall be borne by the creditor and the debtor will not oppose the foreclosure; (5) should the foreclosure sale result in a deficiency, the creditor agrees absolutely to release the judgment in full and no liability shall exist against the debtor; and (6) if pending the delivery of the notes, a sale satisfactory to the creditor is made, the debtor will execute a bill of sale to the purchaser.

On the fourth of December, the creditor filed a suit seeking judgment upon the debt together with foreclosure, and there was a judgment with a foreclosure, an order of sale, and a purchase at the judgment sale for $25,000, credited on the judgment. From these facts, it plainly appears that the transaction was not intended to be nor was it a sale in the sense taken by the board. It was a mere arrangement by which, protecting and preserving its lien against the claims of third parties, the creditor obtained possession of the security in consideration of a cancellation of the debt and Turney, being completely in-

---

[1] "The understanding between Mr. Turney and me, on the one part, and Mr. Fleck, on the other part, was that we were settling the debt due the Pacific National Agricultural Credit Corporation and adopting the form of the bill of sale to make that effective. One consideration that came in was that we were trying to avoid a law suit. We had no property or money with which to pay and Mr. Turney and I had exhausted our resources and credit in trying to meet the obligation. After the transaction with Mr. Ramsey, the partnership had absolutely nothing and owed debts."

solvent, no gain nor profit of any kind resulted to him therefrom. Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 5 Cir., 70 F.2d 95; Cf. Haden Co. v. Commissioner, 5 Cir., 118 F.2d 285 and Walker v. Commissioner, 5 Cir., 88 F.2d 170, where, to the extent that the cancellation freed assets of a solvent taxpayer, gain was held to have resulted.

The decisions and orders of the Board are reversed and the causes are remanded for further and not inconsistent proceedings.