## HOME BUILDERS LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12040.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1948.

R. N. Gresham, of San Antonio, Tex., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., I. Henry Kutz, Sewall Key, Helen R. Carloss, George A. Stinson, and Harry Baum, Sp. Assts. to Atty. Gen., and Charles Oliphant, Chief Counsel, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Petitioner, a Texas corporation, was engaged in the business of selling real estate and the improvements thereon for a small down payment and small monthly payments over a long period of time. It elected to report its income from the sales of real estate on the installment basis. It was incorporated in 1923 by two stockholders, Barnes and Bledsoe, neither of whom actually contributed any capital. In 1932 Barnes withdrew and thereafter Bledsoe owned all, except one qualifying share, of the stock.

In 1935 the taxpayer executed to its sole stockholder, Bledsoe, a note in the amount of $66,027.51, secured by a deed of trust which authorized the trustee, in case of default, to sell the security at public sale. The security consisted of practically all the taxpayer's assets, including all but three of its installment sales contracts. It is claimed that the note was for advances, and interest thereon, which Bledsoe had made from time to the taxpayer, and represented an account stated. It bore 8% interest on the principal, plus interest of 1% on past due interest payments. This note, together with the security, was transferred in 1938 by Bledsoe to the Bledsoe-Campbell-Clark Trust, the beneficiaries of which were Bledsoe and members of his family. It was a revocable trust, controlled by Bledsoe.

After the note went into default, the security was, on December 2, 1941, sold at public sale to Bledsoe's trust, the holder of the note, for $50,000—the appraised value of the note. By the date of the sale the accumulated interest had increased the amount due on the note to $92,954.43, so that after the $50,000 was credited on the note there remained a balance due of $42,954.43.

The Commissioner determined that there was an unreported profit of $29,405.96 on the installment contracts which had been sold.

In the taxpayer's return for the year 1941, the year of the sale of the securities under the trust deed, the taxpayer reported no gain from the sale of its installment contracts. The Commissioner computed that at the date of the sale there was an unreported gain of $22,908.34 from such installment contracts, plus the sum of $1,281.53 of accrued property taxes which the purchaser had assumed. The Tax Court upheld the Commissioner.

In addition to the controversy over whether or not there was a gain realized by the taxpayer in the forced sale of its installment contracts, there also arose the question of whether or not the taxpayer was entitled to charge off in 1941 as a bad debt a note of $6,000, plus interest. This note was given in 1924 by Barnes to Bledsoe when the former was still a stockholder of the taxpayer, and was secured by sixty shares of stock in the taxpayer. The note came into default in the year of its making and pursuant to its terms Bledsoe became entitled to the stock. In 1927 Bledsoe transferred both the note and the stock to his corporation, the taxpayer, for the sum of $6,000. Barnes was not personally liable on the note and the parties understood when the note and stock were transferred to the corporation that the note would not be paid. In 1936 taxpayer claimed a bad debt deduction on account of the note, but this was disallowed by the Commissioner. The note was never reinstated on the corporation's books. By 1941 the certificates of stock which had been put up as security for the

note had disappeared. Nevertheless, the taxpayer claimed a bad debt deduction again in 1941. The Commissioner again disallowed the deduction, and in sustaining the Commissioner, The Tax Court held that Bledsoe's transfer of the defaulted note and the sixty shares of stock to the corporation in 1927 for $6,000 was, in effect, a retirement of that stock. Moreover, The Tax Court found that the taxpayer failed to show that the note first became worthless in 1941.

We do not deem it necessary to enter into an extended discussion of this phase of the case and will dispose of this issue out of its logical order by saying that the finding and judgment of The Tax Court in respect to this note was abundantly supported by the evidence and is affirmed.

The taxpayer failed to file an excess profits tax return for 1941 under which a tax liability would accrue if taxpayer was chargeable with the unreported gain on the installment contracts sold under the trust deed. A penalty of 25% was, therefore, imposed by the Commissioner for failure to file such return. Internal Revenue Code, § 291, 26 U.S.C.A. Int.Rev.Code, § 291. The Tax Court found that the taxpayer had not discharged the burden of showing that its failure to file an excess profits tax return was due to reasonable cause and sustained the imposition of the penalty.

The taxpayer contends that it was insolvent at the time of the sale of the securities and that it did not receive any taxable gain by a cancellation of its indebtedness and, therefore, it is not subject to the tax thereon.

The Commissioner asserts that there is no question of cancellation of indebtedness involved but that these installment contracts of the taxpayer were sold and the taxpayer received credit on its note for the sum of $50,000; that in that $50,000 so received there was a taxable gain on these contracts of unreported income of $22,908.34, plus the gain of $1,281.53 through the assumption of accrued taxes on taxpayer's property.

We agree with The Tax Court that the test here is not the insolvency of the taxpayer, nor whether or not it received a forgiveness or cancellation of any indebtedness, but whether or not there was a gain of $22,908.34 in the disposition of its installment contracts which the corporation realized through the reduction of its indebtedness. Both the solvent and the insolvent may receive profits and be liable for the tax thereon. It stands out clearly that when the contracts were sold a profit of $22,908.34 was realized, and it is immaterial whether or not the proceeds of the sale were sufficient to pay the indebtedness of the taxpayer in full. The tax was not on that part of its indebtedness which it may not have been able to pay by reason of its alleged insolvency. No debt was forgiven nor canceled.

Under Sec. 44(d), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 44(d), if an installment obligation is sold, or otherwise disposed of, gain or loss will result to the extent of the difference between the basis of the obligation and the amount realized in the sale or exchange.

The decision of The Tax Court was correct and its judgment is hereby affirmed.