JAMES J. AND LAURA GEHL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10541–92.                Filed June 22, 1994.

*David Hughes*, for petitioners.
*Jeffrey A. Schlei*, for respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax for the years 1988 and 1989 in the amounts of $6,887.00 and $13,643.00, respec-

tively. The sole issue is the proper treatment of the excess of the fair market value over basis of property, transferred by petitioners to a creditor in partial satisfaction of a debt.

All the facts have been stipulated and are found accordingly. Petitioners resided in Cascade, Iowa, at the time they filed their petition.

As of December 30, 1988, Production Credit Association (Production) held a recourse note from petitioners with a balance due of $152,260. At that time, petitioners were unable to make the required payments. Pursuant to a restructuring agreement, petitioners transferred to Production on December 30, 1988, 60 acres of farmland having a fair market value of $39,000 and a basis of $14,384 and, on January 4, 1989, an additional 141 acres having a fair market value of $77,725 and a basis of $32,080. Pursuant to the agreement, petitioners also paid $6,123 in cash to be applied towards the outstanding balance, and their remaining debt to Production was forgiven. Petitioners were not debtors under title 11 of the U.S. Code (the bankruptcy code) at any time during 1988 and 1989 but were insolvent both before and after the transfers and the discharge of indebtedness. Respondent concedes that the amount of the indebtedness in excess of the fair market value of the transferred land constitutes income from the discharge of indebtedness excludable under section 108.[1]

Respondent contends that the transfers in partial satisfaction of petitioners' indebtedness constitute gains taxable under sections 61(a)(3) and 1001, that such gains do not constitute income from discharge of indebtedness, and that therefore they are not excludable under section 108. Petitioners contend that, because of their insolvency, they realized nothing of value from the gains in question, that such gains should be characterized as income from discharge of indebtedness under section 61(a)(12), and that therefore they are excludable under section 108. We hold for respondent.

It is well settled that a transfer of property by a debtor to a creditor in satisfaction, in whole or in part, of an indebtedness constitutes a "sale or exchange" under section 1001 and that the excess of the fair market value over basis of the property applied against the indebtedness constitutes taxable

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

gain. *Allan v. Commissioner*, 86 T.C. 655, 659–660 (1986), affd. 856 F.2d 1169, 1172 (8th Cir. 1988); *Freeland v. Commissioner*, 74 T.C. 970 (1980). The question before us is whether such excess herein should be treated as "gains derived from dealings in property" includable in gross income under section 61(a)(3) or as "discharge of indebtedness" within the meaning of section 61(a)(12) excludable under section 108, because of petitioners' insolvency. Section 108 provides in pertinent part:

SEC. 108(a). EXCLUSION FROM GROSS INCOME.—

(1) IN GENERAL.—Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if—

\* \* \* \* \* \* \*

(B) the discharge occurs when the taxpayer is insolvent,

At the outset, we note that petitioners' obligation was recourse and not nonrecourse, and that respondent has conceded that the amount of the gain represented by the excess of the amount of the debt over the fair market value of the property transferred constitutes cancellation of indebtedness not includable in gross income because of petitioners' insolvency. Under these circumstances, only the amount of the gain represented by the excess of such fair market value over basis is at issue, and we need not and do not resolve any issue of bifurcation[2] in the context of either recourse or nonrecourse indebtedness. Compare *Estate of Delman v. Commissioner*, 73 T.C. 15 (1979) with *Danenberg v. Commissioner*, 73 T.C. 370 (1979) and Rev. Rul. 76–111, 1976–1 C.B. 214 with Rev. Rul. 90–16, 1990–1 C.B. 12; see Cunningham, "Payment of Debt with Property—The Two-Step Analysis after *Commissioner v. Tufts*," 38 Tax Law. 575 (1985).[3]

---

[2] We note that this bifurcation has "not always been clearly defined" and that earlier cases have been described as reflecting "some confusion". See *Estate of Delman v. Commissioner*, 73 T.C. 15, 31 & n.6 particularly (1979); see also Cunningham, "Payment of Debt with Property— The Two-Step Analysis after *Commissioner v. Tufts*," 38 Tax Law. 575 (1985); Del Cotto, "Basis and Amount Realized Under Crane: A Current View of Some Tax Effects of Mortgage Financing," 118 U. Pa. L. Rev. 69, 87–88 (1969); Eustice, "Cancellation of Indebtedness and the Federal Income Tax: A Problem of Creeping Confusion," 14 Tax L. Rev. 225, 247 (1959). We further note that the Supreme Court has declined to deal with the issue of bifurcation. See *Commissioner v. Tufts*, 461 U.S. 300, 310 n.11 (1983).

[3] See also brief of Wayne G. Barnett, Amicus Curiae, in *Commissioner v. Tufts*, 461 U.S. 300 (1983), for a detailed explanation of the two-step analysis.

Our path to decision involves an analysis of the interplay between section 1.1001–2(a)(2) and (c) *Example (8)*, Income Tax Regs.,[4] and section 1.61–12, Income Tax Regs.[5] In *Danenberg v. Commissioner, supra* at 385–386, we held that, despite the existence of insolvency both before and after the transfer, the taxpayer realized gain to the extent of the excess over basis of the fair market value of the transferred property which was used to satisfy the indebtedness and that such gain did not constitute income from discharge of an indebtedness. See also *Gershkowitz v. Commissioner*, 88 T.C. 984, 1016 (1987); *Estate of Delman v. Commissioner, supra* at 32.

Petitioners seek to distinguish *Danenberg* on the ground that the transfers therein were to third parties and not to the creditor. In point of fact, part of the property transferred (the Meloland stock) in that case was to a nominee of the creditor who simply stood in the shoes of the creditor and did not constitute a third party as did transferees of other property. See *Danenberg v. Commissioner, supra* at 374, 386; Cunningham, *supra* at 613. Moreover, our analysis in *Danenberg* was constructed in the context of our observation that

Case law is clear that when a debt is discharged or reduced upon the debtor's transfer of property to his creditor or a third party, such transaction is treated as a sale or exchange of the debtor's assets, and not as a mere transfer of assets in cancellation of indebtedness. * * * [*Danenberg v. Commissioner, supra* at 380–381; fn. ref. and citations omitted.]

---

[4] Sec. 1.1001–2, Income Tax Regs., provides in pertinent part:

(a) *Inclusion in amount realized.*—(1) * * *

(2) *Discharge of indebtedness.* The amount realized on a sale or other disposition of property that secures a recourse liability does not include amounts that are (or would be if realized and recognized) income from the discharge of indebtedness under section 61(a)(12). For situations where amounts arising from the discharge of indebtedness are not realized and recognized, see section 108 and § 1.61–12(b)(1).

　　　 *　　 *　　 *　　 *　　 *　　 *　　 *

(c) *Examples.* * * * .

*Example (8).* In 1980, F transfers to a creditor an asset with a fair market value of $6,000 and the creditor discharges $7,500 of indebtedness for which F is personally liable. The amount realized on the disposition of the asset is its fair market value ($6,000). In addition, F has income from the discharge of indebtedness of $1,500 ($7,500 − $6,000).

[5] Sec. 1.61–12, Income Tax Regs., provides in pertinent part:

(b) *Proceedings under Bankruptcy Act.* (1) Income is not realized by a taxpayer * * * by virtue of an agreement among his creditors not consummated under any provision of the Bankruptcy Act, if immediately thereafter the taxpayer's liabilities exceed the value of his assets. * * *

Thus, *Danenberg* is a compelling precedent, as is *Estate of Delman v. Commissioner, supra,* insofar as the issue of taxable gain versus income from discharge of indebtedness is concerned. In resolving that issue, both cases rejected the test of lack of economic gain because of insolvency, *Danenberg v. Commissioner, supra* at 380–382, or, in other words, the absence of any freeing of petitioners' assets, *Estate of Delman v. Commissioner, supra* at 31–33.

Petitioners' reliance on *Dallas Transfer & Terminal Warehouse Co. v. Commissioner,* 70 F.2d 95 (5th Cir. 1934), revg. 27 B.T.A. 651 (1933), and *Lakeland Grocery Co. v. Commissioner,* 36 B.T.A. 289 (1937), is misplaced. Those cases were decided upon the basis of the impact of insolvency on the transaction as a whole without any consideration of the possibility of bifurcation of the transaction between the gain and the discharge of indebtedness elements.[6] Moreover, we note that both of these cases and other cases which speak in the same vein[7] involved taxable years commencing prior to January 1, 1939, and were decided before the first statutory provision dealing with income from the discharge of indebtedness was enacted in 1939 as section 22(b)(9) by section 215 of the Revenue Act of 1939, ch. 247, 53 Stat. 875. Substantially the same comment applies to *Main Properties, Inc. v. Commissioner,* 4 T.C. 364, 384–385 (1944), in respect of the taxable year ending November 30, 1939, and *Texas Gas Distrib. Co. v. Commissioner,* 3 T.C. 57 (1944), in respect of a 1941 taxable year but in which no reference is made to the 1939 statutory enactment. Moreover, both these cases appear to have dealt with arrangements with all, as distinguished from one or some, creditors, a position in which different considerations may be involved. An arrangement with all creditors also appears to have been present in *Brutsche v. Commissioner,* 65 T.C. 1034, 1063 (1976), which quotes from *Texas Gas.* Thus, even if not overtaken by subsequent events, see *infra,* these cases are distinguishable and clearly do not support a departure from *Danenberg v. Commissioner, supra.*

---

[6] See comments on *Dallas Transfer & Terminal Warehouse Co. v. Commissioner,* 70 F.2d 95 (5th Cir. 1934), revg. 27 B.T.A. 651 (1933), in Trower, Federal Taxation of Bankruptcy and Workouts, par. 2.04[3][b], at 2–75 to 2–76, and par. 5.05[6], at 5–38 n.127 (1993).

[7] *Turney's Estate v. Commissioner,* 126 F.2d 712 (5th Cir. 1942), revg. a Memorandum Opinion of this Court dated Sept. 25, 1940; *Commissioner v. Simmons Gin Co.,* 43 F.2d 327 (10th Cir. 1930), affg. 16 B.T.A. 793 (1929); *Springfield Industrial Building Co. v. Commissioner,* 38 B.T.A. 1445 (1938); *Quinn v. Commissioner,* 31 B.T.A. 142 (1934).

It cannot be gainsaid that the early judicial history in respect of the gain from a sale or exchange with income from discharge of indebtedness has not been exemplary in its message. See *Estate of Delman v. Commissioner*, 73 T.C. at 31 & n.6 particularly; Cunningham, "Payment of Debt with Property—The Two-Step Analysis after *Commissioner v. Tufts*," 38 Tax Law. 575, 622 (1985). But we are of the view that the cases reflecting that history have been overtaken by subsequent judicial pronouncements which have sapped them of much, if not all, of their vitality.[8] See *Hicks v. Commissioner*, 47 T.C. 71, 74 (1966).

As we see it, paragraphs (3) and (12) of section 61(a) are separate, independent, and not overlapping provisions in respect of the includability of a particular item in income. *Danenberg v. Commissioner, supra.* Consequently, the first steps in analyzing the consequences of a transfer of property in satisfaction of an indebtedness, in whole or in part, are to determine whether (1) gain or loss occurred under section 61(a)(3), and/or (2) there was cancellation of indebtedness under section 61(a)(12). *Danenberg v. Commissioner, supra* at 380; see also *Home Builders Lumber Co. v. Commissioner*, 165 F.2d 1009 (5th Cir. 1948), affg. a Memorandum Opinion of this Court dated Dec. 9, 1946; Cunningham, *supra* at 623. Only after it is determined that the latter provision applies does one reach the question of the impact of insolvency and therefore the applicability of section 108. This approach conforms precisely to the language of section 108(a)(1), which applies only to income "which (but for this subsection) would be includible in gross income by reason of the discharge * * * of indebtedness of the taxpayer", see *supra* p. 786. In this connection, we think it significant that section 108, by its terms, is the exclusive exception from "the general rule that gross income includes income from the discharge of indebtedness". Sec. 108(e)(1); see Trower, Federal Taxation of Bankruptcy and Workouts, par. 3.02, at 3–8 to 3–9 (1993).

In sum, we reaffirm *Danenberg v. Commissioner, supra,* and hold that section 1.1001–2, Income Tax Regs., see *supra*

---

[8] Contributing to this consequence are the substantial revisions of the statutory provisions dealing with income from discharge of indebtedness which were made by sec. 108, enacted as part of the Internal Revenue Code of 1954, and by the amendments thereto in the Bankruptcy Tax Act of 1980, Pub. L. 96–589, 94 Stat. 3389. See Eustice, "Cancellation of Indebtedness and the Federal Income Tax: A Problem of Creeping Confusion," 14 Tax L. Rev. 225, 272–276 (1959); Trower, Federal Taxation of Bankruptcy and Workouts, par. 3.01, at 3–3 to 3–8 (1993).

note 4, accurately reflects the proper treatment of the elements involved where property is transferred by the debtor to a creditor having a fair market value in excess of basis but less than the amount of a recourse debt and which is reflected in respondent's position herein. See also *Michaels v. Commissioner*, 87 T.C. 1412, 1415 (1986); *Bressi v. Commissioner*, T.C. Memo. 1991–651, affd. without published opinion 989 F.2d 486 (3d Cir. 1993); Trower, *supra* par. 5.05[3], at 5–30. Accordingly, the gains in question do not constitute "income from discharge of indebtedness" under section 61(a)(12) and are therefore not excludable under section 108.

In order to take into account an adjustment resulting from a concession by respondent in respect of the excess of the indebtedness above the fair market value of the property transferred, see *supra* p. 785,

*Decision will be entered under Rule 155.*