T.C. Summary Opinion 2001-74

UNITED STATES TAX COURT

RICHARD WILLIAM CORDUAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 920-00S.                          Filed May 31, 2001.

Richard William Corduan, pro se.

<u>Mark J. Miller</u> and <u>Mark D. Petersen</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

Respondent determined deficiencies in petitioner's Federal income taxes of $8,228, $3,439, and $4,096, and accuracy-related penalties of $1,646, $688, and $819 for the taxable years 1995, 1996, and 1997.

After concessions,[1] the issues for decision are:  (1) Whether petitioner had unreported discharge of indebtedness income; (2) whether petitioner has properly substantiated various items for the years in issue, namely entitlement to (a) dependent exemption deductions for his parents, (b) head of household filing status, (c) certain charitable contribution deductions, (d) certain limited liability company losses, (e) the deduction of certain business expenses and the subtraction from gross receipts of an amount of cost of goods sold, and (f) a carryforward of a net operating loss from 1994 to the years in issue; (3) whether, and if so to what extent, petitioner must include in income a State income tax refund he received; and (4)

---

[1]Petitioner concedes that he received unreported dividend income of $26 in 1995 and that an early distribution in 1997 of $4,924 from a qualified retirement plan is income, but is not wages, and is subject to the 10-percent additional tax under sec. 72(t).  The parties also agree that the adjustments to capital gains in the statutory notice of deficiency should be reduced from $11,496, $2,044, and $1,649 for 1995, 1996, and 1997 to $2,923, $39, and $143 for each respective year.

whether petitioner is liable for accuracy-related penalties for negligence or disregard of rules or regulations.[2]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Trevor, Wisconsin, on the date the petition was filed in this case. Petitioner's audit commenced on May 28, 1998.

The first issue for decision is whether petitioner had unreported discharge of indebtedness (DOI) income. Respondent determined that petitioner had unreported DOI income of $6,005 in 1995.

Gross income generally includes all income from whatever source derived including gains from dealings in property and income from DOI. See sec. 61(a)(3), (12); sec. 1001. Where a debt is discharged upon the debtor's transfer of property to his creditor, such transaction is treated as a sale or exchange of the debtor's property. See Gehl v. Commissioner, 102 T.C. 784 (1994), affd. without published opinion 50 F.3d 12 (8th Cir. 1995). In the case of recourse indebtedness, the debtor recognizes gain on the transfer of the property in an amount equal to the excess of the fair market value over the basis of the property. See id. Such gain is includable in gross income

---

[2]The adjustment to petitioner's deduction of medical expenses in 1996 is computational and will be resolved by the Court's holding on the issues in this case.

under section 61(a)(3).  See id.; sec. 1001; sec. 1.1001-2, Income Tax Regs.  The excess of the amount of the discharged recourse indebtedness over the fair market value is DOI income includable under section 61(a)(12).  See sec. 1.1001-2(a)(2) and (c) Example (8), Income Tax Regs.

A piece of equipment (a "Bobcat") was purchased by petitioner, a friend of petitioner, and petitioner's father for use in the friend's business.  A financing statement was filed naming petitioner as a debtor on a loan secured by the Bobcat and other property.  In 1995, the Bobcat was repossessed by the creditor which financed the purchase, Associates Commercial Corporation (Associates), formerly Clark Credit Corporation.  A Form 1099-A, Acquisition or Abandonment of Secured Property, was issued to petitioner in 1995.  This form reflects an outstanding principal balance of $18,581 on a recourse debt, and the Bobcat's fair market value of $12,575.  For several months after receiving the form, petitioner attempted to make payments for the Bobcat.  He then retained the services of an attorney in order to advance his argument that he never signed a contract regarding the purchase of the Bobcat and that he did not own it.  On February 14, 1996, a Release of All Claims and Indemnification Agreement was executed by Associates.  Pursuant to this agreement, Associates agreed to release petitioner and his father from any claim based on the Bobcat sales contract.  Petitioner paid

Associates $1,000 as settlement proceeds in exchange for this release.

Petitioner argues that he did not own the Bobcat. However, he presented no corroborating evidence of his testimony to this effect, and he did not call either his father or his friend as a witness. We decline to accept petitioner's uncorroborated, self-serving testimony in light of both the Form 1099-A and the financing statement showing petitioner as debtor. Accordingly, we find that petitioner was indebted in the amount of $18,581 at the time of the repossession in 1995. On the other hand, we accept petitioner's testimony that he paid Associates an additional $1,000 as settlement proceeds because corroborating references to the receipt of the settlement proceeds were made both in the release and in a letter from counsel for Associates.

Respondent determined that petitioner received the DOI income in 1995. Debt is considered discharged the moment it is clear that it will not be repaid. See Cozzi v. Commissioner, 88 T.C. 435 (1987). Determining when this moment occurs requires an assessment of the facts and circumstances surrounding the likelihood of repayment. See id. "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration." Id. at 445. Respondent based his determination on the Form 1099-A issued to petitioner. The Court takes judicial notice of the document "Instructions for Forms 1099,

1098, 5498, and W-2G" provided by the Internal Revenue Service for 1995.  A Form 1099-A is intended to be used only as notification of the acquisition of an interest in secured property in full or partial satisfaction of debt, or of the abandonment of secured property; it is not meant to necessarily imply that the debtor received DOI income.  The form designed to be used in the case of DOI is Form 1099-C, Cancellation of Debt.  If both forms apply, only Form 1099-C need be filed.  In this case, after petitioner received the Form 1099-A, he continued to attempt to make payments on the debt.  Furthermore, petitioner was not released from all further claims by Associates until he made a final $1,000 payment the following year.  We find that, contrary to respondent's determination, the debt was not discharged until 1996.

Finally, we find that petitioner recognized only $5,006 in DOI income, rather than $6,005 as determined by respondent.  The Bobcat, with a fair market value of $12,575, was obtained by Associates in 1995, and petitioner paid Associates $1,000 in 1996.  Therefore, petitioner transferred $13,575 in cash and property to Associates in exchange for the discharge of $18,581 of indebtedness.

The second issue for decision is whether petitioner has properly substantiated various items on his Federal income tax returns for the years in issue.

A taxpayer generally must keep records sufficient to establish the amounts of the items reported on his Federal income tax return. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. However, in the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) imposes stricter requirements and supersedes the Cohan doctrine. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. 412 F.2d 201 (2d Cir. 1969). Section 274(d) provides that, unless the taxpayer complies with certain strict substantiation rules, no deduction is allowable (1) for traveling expenses, (2) for entertainment expenses, (3) for expenses for gifts, or (4) with respect to listed property. To meet the strict substantiation requirements, the taxpayer must substantiate the amount, time, place, and business purpose of the expenses. See sec. 274(d); sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46006 (Nov. 6, 1985).

The first item for which substantiation is at issue is petitioner's entitlement to dependent exemption deductions for his parents. The second item is petitioner's entitlement to head of household filing status. In 1996 and 1997, petitioner filed as head of household, claiming dependent exemption deductions for his parents. For both years, respondent disallowed the deductions and changed petitioner's filing status to single.

A dependent exemption deduction is allowed under section 151(a) for a parent of a taxpayer only if, among other requirements, the taxpayer provides over half of the parent's support for the year. See secs. 151(c) and 152(a). A taxpayer is considered a head of household with respect to a parent only if, among other requirements, the taxpayer maintains a household which constitutes the principal place of abode of that parent, and the taxpayer is entitled to a dependent exemption deduction for the parent for that taxable year. See sec. 2(b)(1). Although the taxpayer is not required to reside with his parents for purposes of section 2(b), he must maintain the household, which means that he must pay more than one-half the cost of maintaining the household for the taxable year. See sec. 1.2-2(c), Income Tax Regs.

Petitioner testified that he lives in the same home as his parents and that his parents' sole source of income is their monthly Social Security payments of approximately $1,000. He

provided copies of various invoices, primarily for medical expenses of his parents, but did not show if or when he paid these expenses. Nothing in the record shows or even estimates an amount which petitioner actually provided for his parents' support or to maintain the home. We find that petitioner did not provide over half his parents' support for either 1996 or 1997. Furthermore, because petitioner's parents do not qualify petitioner for dependent exemption deductions for either year, petitioner is not entitled to head of household filing status in those years. We uphold respondent's determinations with respect to both of these items.

The next item at issue is petitioner's entitlement to certain charitable contribution deductions. Petitioner claimed a charitable contribution deduction of $500 in each of 1996 and 1997. Respondent disallowed these deductions in full.

A deduction is allowed for charitable contributions made during the taxable year to certain types of organizations only if the deductions are verified under regulations prescribed by the Secretary. See sec. 170(a). Under the regulations, a deduction for charitable contributions generally is not allowed without written records. See sec. 1.170A-13, Income Tax Regs. See also sec. 1.6001-1(a), (e), Income Tax Regs.

Petitioner presented only vague testimony to substantiate his claimed charitable contribution deductions. He testified

only that he "would say United Way got some" and that he also made contributions to his church. He could not recall the exact amounts of such contributions. In the absence of any written records or other substantiation for the charitable contributions, we uphold respondent's disallowance of the deductions therefor.

The next item at issue is petitioner's entitlement to certain limited liability company (LLC) losses. Petitioner claimed partnership losses of $21,600 and $20,763 in 1996 and 1997, respectively, for an LLC. Respondent disallowed these losses in full.

An LLC with more than one member is treated as a partnership for Federal income tax purposes unless the LLC elects otherwise. See sec. 301.7701-3, Proced. & Admin. Tax Regs.

The LLC in which petitioner was a member did not file a partnership return in either year. In 1996, petitioner filed a Schedule E, Supplemental Income and Loss, reflecting a partnership loss. In 1997, petitioner completed a Schedule C, Profit or Loss From Business, and then claimed approximately 56 percent of the net loss reported on this form as his distributive share of the LLC's loss. Petitioner presented no evidence to support the claimed losses or the underlying expenses listed on the Schedule E or C. Furthermore, at least a portion of the expenses listed on the schedules, if actually incurred, were not related to any business. For example, legal and professional

fees of $14,500 were reported in 1997.  Asked at trial if he paid an attorney $14,500 in legal fees, petitioner replied:  "Yes, I did.  It wasn't legal fees--well, most of--about $5,000 of that was legal fees" used to "save my home from being foreclosed."  We uphold respondent's disallowance of the LLC losses.

The next item at issue is petitioner's entitlement to the deduction of certain business expenses and the subtraction from gross receipts of an amount of cost of goods sold.  Petitioner filed a Schedule C in 1995 for a business engaged in "brick and patio construction".  Petitioner subtracted from zero gross receipts cost of goods sold of $13,719 and deducted expenses of $3,500.  Respondent disallowed both the cost of goods sold adjustment and the expenses deduction.

Expenses which are ordinary and necessary in carrying on a trade or business generally may be deducted in the year in which they are paid.  See sec. 162(a).  Cost of goods sold is subtracted from gross receipts in determining a taxpayer's gross income.  See Sullenger v. Commissioner, 11 T.C. 1076 (1948).

Petitioner provided nothing to support the deductions or the cost of goods sold on the Schedule C.  We therefore uphold respondent's disallowance.  We note briefly that the business activity referenced on this Schedule C actually may have been that of a corporation named Simblu Brick & Patio Company.  A corporation is a separate legal entity, and an individual

generally may not claim deductions for expenses incurred by a corporation.  See Gantner v. Commissioner, 91 T.C. 713, 725 (1988), affd. 905 F.2d 241 (8th Cir. 1990).

The final item for which substantiation is at issue is petitioner's entitlement to a carryforward of a net operating loss from 1994 to the years in issue.  Petitioner argues in the petition that there was a "1994 loss [which] was greater than anticipated which was not carried forward into 1995."  Petitioner did not claim any deduction for such a loss on his return, and consequently the issue is not addressed in the notice of deficiency.

As a general rule, net operating loss carryovers are allowed as deductions under section 172(a).  However, unless the taxpayer elects otherwise, a net operating loss for any taxable year generally must be carried back to each of the 2 taxable years preceding the year of loss before being carried forward to each of the next 20 years following the year of loss.  See sec. 172(b)(1)(A), (b)(2), and (b)(3).

Petitioner briefly testified concerning this issue, but provided no details and presented no corroborating documentation concerning the amount of any losses in 1994.  Amended returns filed by petitioner with the Internal Revenue Service for taxable years 1992 through 1997, presumably showing these and other losses, are in the record.  The assertions in these documents,

however, are merely statements by petitioner and are not corroborating evidence. With no evidence of a net operating loss in 1994, we hold that petitioner is not entitled to a deduction for a net operating loss carryover in any of the years in issue. We also note that nothing in the record indicates petitioner either carried back the loss to prior taxable years or elected to waive the carryback, as required under section 172.

The third issue for decision is whether, and if so to what extent, petitioner must include in income a State income tax refund he received. Petitioner did not include in income any State tax refund in 1997. Respondent determined that petitioner received an unreported State income tax refund in that year in the amount of $2,073.

Under the judicially created tax benefit doctrine, a taxpayer generally must include in income the recovery or refund of an amount deducted in a prior year. See Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370 (1983). However, a taxpayer is not required to include in income such recovery or refund to the extent that it did not provide the taxpayer with a tax benefit in the prior year. See id.; sec. 111(a).

Petitioner claimed an itemized deduction for State and local income taxes in the amount of $1,116 in 1996. Petitioner must include in gross income in 1997 the State income tax refund received in that year to the extent he received a tax benefit

from the deduction of the State income taxes in 1996.[3]  However, the amount included in gross income is limited to the $1,116 deduction; the remainder of the $2,073 refund reflected in the notice of deficiency is not includable, contrary to respondent's determination.  See sec. 111(a).

The final issue for decision is whether petitioner is liable for accuracy-related penalties for negligence or disregard of rules or regulations.  Respondent determined that petitioner was liable for the penalty for an underpayment equal to the total amount of the deficiency in each year in issue.

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations. See sec. 6662(b)(1).  "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  The

---

[3]The final amount of the inclusion will be calculated in the Rule 155 computation required in this case.

determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year.  See id.

Petitioner failed both to keep adequate books and records reflecting income of his businesses and to properly substantiate the numerous and varied items reported on his return.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  We hold that the record supports respondent's determination of negligence in this case, and nothing in the record indicates petitioner acted with reasonable cause and in good faith.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.