**In re Marti and Robert EICHOLZ,
Appellants.**

No. C03–3249Z.

United States District Court,
W.D. Washington,
at Seattle.

April 23, 2004.

Richard L. McKinney, Seattle, WA, for appellant.

Daniel E. Forsch, Edmonds, WA, Phillip E. Miller, Lynnwood, WA, for appellees.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on an appeal from an order denying a motion to be dismissed from a bankruptcy proceeding, docket no. 10. The Court has reviewed the briefing submitted by the parties and enters the following order.

### BACKGROUND

On March 14, 2003, Marti Eicholz filed a Chapter 11 bankruptcy petition on behalf of herself and her husband, appellant Robert Eicholz, d/b/a the Institute for Transformation, LLC. Appellant has been married to his wife for over thirty years. Supp. Docs., docket no. 16, Ex. 4 (Transcript of First Creditor's Meeting) ("Transcript"), pg. 2, lns. 11–13. Mrs. Eicholz handled all of the couple's financial affairs. *Id.*, pg. 11, lns. 3–19. And the Institute for Transformation was run exclusively by Mrs. Eicholz. *Id.*, pg. 10, lns. 1–4.

In 2001, Appellant first became aware of the couples financial problems when "a notice was slipped under the door of [the] Kirkland condominium that there was a default against the lien on that condominium." Supp. Docs., docket no. 16, Ex. 4 (Transcript, pg. 12, lns. 5–8). Up to that point, Appellant did not know that there was a mortgage on the Kirkland condo-

minium, or any other property owned by Appellant. *Id.*, pg. 12, lns. 11–15. The mortgages were signed by Mrs. Eicholz pursuant to a general power of attorney. *Id.*, pg. 12, lns. 16–18.

Appellant had signed a power of attorney on August 22, 2001, which conveyed to Mrs. Eicholz "all of the powers of an absolute owner over the assets and liabilities" of Appellant. Supp. Docs., docket no. 16, Ex. 1, pg. 1, ¶ 3. Those powers included, "without limitation," the following:

3.1 *Real Property.* The attorney-in-fact shall have authority to purchase, take possession of, lease, sell, convey, exchange, mortgage, release and encumber real property or any interest in real property.

3.2 *Personal Property.* The attorney-in-fact shall have authority to purchase, take possession of, lease, sell, convey, exchange, mortgage, release and encumber real property or any interest in real property.

3.6 *Claims Against Principal.* The attorney-in-fact shall have the authority to pay, settle, compromise or otherwise discharge any and all claims of liability or indebtedness against the Principal and, in so doing, use any of the Principal's funds or other assets or use funds or other assets of the attorney-in-fact and obtain reimbursement out of the principals' funds or other assets.

3.7 *Legal Proceedings.* The attorney-in-fact shall have authority to participate in any legal action in the name of the Principal or otherwise. This shall include (a) actions for attachment, execution, eviction, foreclosure, indemnity, and any other proceedings for equitable or injunctive relief and (b) legal pro-

ceedings in connection with the authority granted in this instrument.

4. *LIMITATIONS OF POWERS.* Notwithstanding the foregoing, the attorney-in-fact shall not have the authority to make, amend, alter, revoke or change any life insurance policy, employee benefits, or testamentary disposition of the Principal's property or to make any gifts of such property or to exercise any power of appointment. This limitation shall not affect the authority of the attorney-in-fact to disclaim an interest.

Supp. Docs., docket no. 16, Ex. 1, pg. 1–2. The document also contains a choice of law provision, designating Washington State as the governing law. *Id.,* pg. 3. The power of attorney also states that Appellant resided and was domiciled in Kirkland, Washington. *Id.,* pg. 1, ¶ 1. In 1987, Appellant bought a condo in Wailea, Hawaii. *Id.,* pg. 3, lns. 12–26; pg. 4, lns. 7–8. He spent half his time living in Hawaii, and the other in Washington. *Id.*

This matter arises out of a bankruptcy petition signed by Mrs. Eicholz for Appellant under the power of attorney on or about March 14, 2003. Supp. Docs., docket no. 16, Ex. 2. Mrs. Eicholz told Appellant about the bankruptcy petition in "mid to late March," but Appellant states that he did not know that he was part of it. Supp. Docs., docket no. 16, Ex. 4 (Transcript, pg. 2, lns. 5–8). "Shortly after that," Appellant learned that he had been named as a debtor in the proceedings, and he "sought legal counsel [in] late May, early June." *Id.,* pg. 2, lns. 9–11.

On May 9, 2003, the case was converted from a Chapter 11 case to a Chapter 7 case, and a Trustee was appointed. Bankruptcy Docket nos. 28, 29.

On June 4, 2003, Appellant wrote to the Bankruptcy Court, advising the Court that he had not authorized Mrs. Eicholz to file for bankruptcy on his behalf and that he had retained counsel for the purpose of having him dismissed from the case. Supp. Docs., docket no. 16, Ex. 2. Appellant further stated that the power of attorney did not empower Mrs. Eicholz to file for bankruptcy on his behalf and that he had not ratified his wife's actions. *Id.*

On August 29,2003, the Bankruptcy Court heard Appellant's motion to dismiss and denied the motion. Supp. Docs., docket no. 16, Ex. 4 (Hearing Transcript, pg. 3). The Bankruptcy Court found that Appellant had ratified the filing of the petition by both his actions and inactions. *Id.* (Hearing Transcript, pg. 5, lns. 22–25). The court stated that "[y]ou can't sit by and obtain benefits of bankruptcy, and then later on when maybe something is happening that you don't agree, move to dismiss it." *Id.* (Hearing Transcript, pg. 5, ln. 25; pg. 6, lns. 1–3). The court concluded that Appellant "gave the power of attorney, and he knew what was going on. He did have notice, sat around for a while, [and] didn't do anything." *Id.* (Hearing Transcript, pg. 6, lns. 10–13).

Appellant appeals the order entered by Bankruptcy Judge Thomas T. Glover, denying his motion to be dismissed from the bankruptcy proceeding.

## DISCUSSION

The issue of whether the power of attorney granted Mrs. Eicholz the authority to file for bankruptcy on Appellant's behalf is subject to *de novo* review. Conclusions of law and mixed questions of law and fact are subject to *de novo* review. *Hall–Mark Elec. Corp. v. Sims (In re Lee),* 179 B.R. 149, 155 (9th Cir. BAP 1995), *aff'd* 108 F.3d 239 (9th Cir.1997). Mixed questions of law and fact exist when the facts are established, the rule of law is undisputed,

and the issue is whether the facts satisfy the rule of law. *Id.*

■ The issue of whether the filing of the bankruptcy petition was ratified is reviewed for abuse of discretion. Under the abuse of discretion standard, a court's decision must be affirmed if the decision is "plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Even if the reviewing court is convinced that it would have weighed the evidence differently and reached a different conclusion, the decision must be upheld if it is plausible. *Id.* ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

## A. Bankruptcy Filing

Appellant's wife signed the joint bankruptcy petition for her husband under a general power of attorney.

Under 11 U.S.C. § 302,

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

■ To file a joint petition under section 302, both the debtor and the debtor's spouse must file the petition, and "one spouse cannot take the other into bankruptcy without the other's knowledge or consent." H.R.Rep. No. 95–595, at 321 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6277, 6278.

## B. Power of Attorney

A bankruptcy case may be commenced through an attorney-in-fact under appropriate circumstances. Fed. R. Bankr.P. 9010(c). Courts have permitted a spouse to sign a petition for bankruptcy on behalf of the other spouse pursuant to a general power of attorney if commencement of the proceedings is within the scope of the language of the document granting the power of attorney. *In re Curtis,* 262 B.R. 619, 622 (Bankr.D.Vt.2001). Courts are "split as to the requisite indicia of authority needed to allow an attorney-in-fact" to file a petition for bankruptcy on behalf of a debtor. *Id.*

Some courts will recognize the effectiveness of a power of attorney if the express language of the document specifically authorizes the filing of bankruptcy. For example, in *In re Ballard,* the wife had filed a bankruptcy petition on behalf of her husband, who was stationed in Europe, using a standard power of attorney. No. I-87-00718, 1987 Bankr.LEXIS 725, at *1 (N.D. Cal. April 30, 1987). Foreclosure was imminent and there was no time to get the husband's signature on the petition. *Ballard,* 1987 Bankr.LEXIS 725, at *1. Because the general power of attorney did not specifically mention bankruptcy, the court directed the parties to notify the husband of the bankruptcy petition and held that the proceedings would be dismissed unless the husband notified the court that the filing was not beyond the scope of the power of attorney. *Id.,* at *2. *See also In re Brown,* 163 B.R. 596, 598 (Bankr.N.D.Fla.1993) (power of attorney did not expressly authorize the filing of a bankruptcy petition and there was no opportunity for the debtor to ratify the petition because he had died). *Cf. In re Sullivan,* 30 B.R. 781, 782 (Bankr.E.D.Pa.1983) (petition for bankruptcy pursuant to a general power of attorney permitted where debtor later amended the power of attorney to include the right to file bankruptcy).

Other courts have adopted a less restrictive approach and found a petition signed by an attorney-in-fact to be valid if the general language of the document granting the power of attorney is broad enough to authorize the filing of the petition. For example, in *In re Hurt,* the power of attorney granted broad authority over the debtor's financial affairs and the power to "commence and prosecute, defend or settle .... all actions or proceedings" in which the debtor has or may have any interest or concern. 234 B.R. 1, 3–4 (Bankr.D.N.H. 1999). The court found that the broad grant of powers over both the financial and legal affairs included the power to commence bankruptcy proceedings. *Hurt,* 234 B.R. at 4. However, in *Curtis,* the court found that the grant of a power of attorney did not include the power to file bankruptcy petitions where the document granting the power of attorney did not address litigation in general or bankruptcy in particular. 262 B.R. at 623.

■ The Court finds the more restrictive approach to recognizing the effectiveness of a power of attorney to be consistent with section 302 and its legislative history, which requires the knowledge and consent of each spouse to file a joint a petition. The Court concludes that a spouse may file a joint petition for bankruptcy by signing for the other spouse pursuant to a general power of attorney if the express language of the document grants the power to initiate a bankruptcy proceeding.[1]

In this case, the power of attorney grants the authority to manage Appellant's real and personal property and to "participate in any legal action" for "attachment execution, eviction, foreclosure indemnity, and other proceedings for equitable or injunctive relief" and for "legal proceedings in connection with the authority granted in this instrument." Supp. Docs., docket no. 16, Ex. 1, pg. 2, ¶ 3.7. The document also grants the authority to "discharge any and all claims of liability or indebtedness against the Principal." *Id.,* pg. 2, ¶ 3.6. Discharge means "to release; liberate; annul; unburden; disincumber; [or] dismiss." Black's Law Dictionary 463 (6th ed.1990). Discharge also means to "extinguish an obligation (*e.g.* a person's liability on an instrument)"; it is a generic term. *Id.* A debt may be discharged by payment or performance or by any other act that will satisfy it.

■ The Court finds that a generic grant of authority to discharge debt is not specific enough to find that the power of attorney also authorized Mrs. Eicholz to initiate bankruptcy on Appellant's behalf. The power of attorney was not created for the purpose of commencing a bankruptcy proceeding. And the Court concludes that the power of attorney in this case did not include the power to initiate bankruptcy proceedings and that the proceedings against Appellant may not proceed, unless Appellant ratified the filing.

## C. Ratification

### 1. Delay in Filing Motion

■ "Ratification is the affirmance by a person of a prior act which did not bind

---

1. This is consistent with laws of Washington, which state that powers of attorney "will be held only to grant those powers which are specified and the agent may neither go beyond or deviate from the express provisions." *Bryant v. Bryant,* 125 Wash.2d 113, 118, 119, 882 P.2d 169 (1994) (holding that the "power of attorney must contain specific authorization for gift transfers of community property"). *See also Scott v. Goldman,* 82 Wash. App. 1, 5–6, 917 P.2d 131 (1996) (power of attorney granted the power to initiate lawsuit but did not expressly grant authority to accept service of process, which is governed by statute).

him but which was done or professedly done on his account, whereby the act . . . is given effect as if originally authorized by him." *Riss v. Angel*, 131 Wash.2d 612, 636, 934 P.2d 669 (1997). The principal ratifies the prior act if, with full knowledge of the facts, he "accepts the benefits of the acts" or assumes that an obligation is imposed. *Id.* And any conduct manifesting an intent to treat an unauthorized act as authorized, such as failure to repudiate a contract, supports a finding of ratification. *Rayonier Inc. v. Polson*, 400 F.2d 909, 915 (9th Cir.1968). Appellees argue that Appellant ratified the filing of the petition because he did not act promptly to reject the bankruptcy and enjoyed its benefits.

Appellant states that he knew about the bankruptcy in mid to late March 2003, but did not know that he was a named debtor. Appellant discovered that he was a named debtor shortly thereafter. Appellant states: "Shortly after that, I guess I figured out that I was; in that, uh, I sought legal counsel late May, early June sometime in there I think it was." Supp. Docs., docket no. 16, Ex. 4 (Transcript, pg. 2, lns. 9–11). Appellant attempted to reject the bankruptcy on June 4, 2004.

In a declaration dated July 2, 2003, Appellant stated that he did not know that he was a party to the bankruptcy proceeding until he started receiving pleadings at his home in Hawaii. Supp. Docs., Ex. 3 (Eicholz Decl., ¶ 6). One of the pleadings that

Appellant received was an "Objection to Vacation to Dismissal" by Appellee Wachovia. *Id.*, ¶ 7. In his briefing to the Bankruptcy Court, Appellant stated that he received the pleadings from Wachovia in late April and that this is when he became aware of the bankruptcy. Supp. Docs., docket no. 16 (Eicholz Mot., pg. 7, lns. 9–10). On May 9, 2003, the case was converted from a Chapter 11 case to a Chapter 7 case, and a Trustee was appointed. Bankruptcy Docket nos. 28, 29. Appellant waited to seek legal counsel until late May or early June and notified the Bankruptcy Court of his intent to object on June 4, 2003. Appellant filed his motion to dismiss on July 2, 2003. *Id.*, docket no. 43.

■■■ The passage of time, without more, is not enough to support a finding of ratification. *See Atlas Bldg. Supply Co., Inc. v. First Independent Bank of Vancouver*, 15 Wash.App. 367, 371, 550 P.2d 26 (1976) (several months delay not ratification). Here, only three months had lapsed between the time the bankruptcy petition was filed and when Appellant objected to the proceedings. The Court finds that a three month delay does not support a finding of ratification.

### 2. Receipt of Benefits

The Bankruptcy Court also found that Appellant had received benefits from the bankruptcy.[2] Appellees argue that Appel-

---

2. At the time the petition was filed, Appellant owned two residences that came into the bankruptcy, making Appellant eligible for potential tax benefits. Appellees argue that Appellant received monetary benefits by the capture of capital gain income taxes in the Chapter 11 estate when Appellant's Sammamish residence was foreclosed. Appellant argues that he received no tax benefit.

Under section 108 of the Internal Revenue Code, "[g]ross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the

discharge (in whole or in part) of indebtedness of the taxpayer if . . . the discharge occurs" in a Title 11 case or when the taxpayer is insolvent. 26 U.S.C. §§ 108(a)(1)(A), (B). However, if the taxpayer "realized gain to the extent of the excess over the basis of the fair market value" of the property, which was used to satisfy the indebtedness, the gains in excess over the basis are considered to be taxable income. *Gehl v. Comm'r*, 102 T.C. 784, 786–87, 790, 1994 WL 274001 (1994). Appellant contends that at the time of the foreclosure of the Sammamish residence, his

lant benefitted from bankruptcy because the foreclosure of the Hawaii condominium was stayed by the filing of the bankruptcy petition, which gave Appellant more time to sell the condominium.[3] *See* Supp. Docs., docket no. 16, Ex. 4 (Transcript, pg. 12, lns. 9–12). Appellant argues that the Bankruptcy Court erred by considering this information because the automatic stay would have occurred even if Mrs. Eicholz had filed for bankruptcy on her own because the condominium is jointly owned as tenants in the entirety. Because the stay would have been effective on the Hawaii property regardless of whether Appellant was a named debtor, the Court concludes that this does not support a finding that Appellant received benefits as a result of the stay.

The Court concludes that the Bankruptcy Court's finding that Appellant ratified the bankruptcy proceedings is not supported by substantial evidence.

*CONCLUSION*

The Court hereby REVERSES the decision by the Bankruptcy Court to deny the motion to dismiss. The case is remanded to the Bankruptcy Court to enter an order of dismissal consistent with this opinion.

IT IS SO ORDERED.

basis in the property had been depreciated to zero and that because the fair market value of the property exceeded its basis, any gain received was taxable.

Appellant makes this argument for the first time on appeal and offers no admissible evidence showing that the basis in the property had been depreciated to zero. Accordingly, the Court finds that because Appellant did not make this argument to the Bankruptcy Court, it is unknown when Appellant actually learned that he would not be receiving a benefit. As a result of the petition for bankruptcy, Appellant became eligible for poten-

tial tax benefits. The Trustee represented to the court that as a result of the sale of the Sammamish residence, "several $100,000 worth of tax were kept in the Chapter 11 stay." Supp. Docs., docket no. 16, Ex. 4 (Hearing Transcript, pg. 5, lns. 1–2). Accordingly the Court concludes that the Bankruptcy Court did not err by considering the benefits of bankruptcy.

3. Appellant has been living in Hawaii full time since 2001. Supp. Docs., docket no. 16, Ex. 3 (Eicholz Decl., ¶ 6).